SOUTHERN EXPRESS COMPANY *v.* A. F. WAMBLE.

[60 South. 642.]

1. MASTER AND SERVANT. *Liability of master for acts of servant. Sufficiency of proof. Appeal and error. Harmless error.*

In a suit against an express company for damages caused by an assault of one of its employees, evidence, as shown in opinion of court, *held* sufficient to warrant a recovery.

2. SAME.

In such case where the plaintiff introduced in evidence over the objection of defendant a certified copy of the returns of the property of the express company as made by the company to the railroad commissioners, for the purpose of showing the wealth of defendant, *held*, that if this was error it was harmless as the showing made instead of showing that the defendant was wealthy, tended to show that it was comparatively speaking almost a pauper.

Appeal from the circuit court of Monroe county.
Hon. J. H. MITCHELL, Judge.

Suit by A. F. Wamble against the Southern Express Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Leftwich & Tubb*, for appellant.

The law is, without citing authorities, that to hold plaintiff, this agent must at the time of the assault be engaged in and about the discharge of the business of the defendant and it must be in connection with his business and in accordance with the instructions of the master, and in the furtherance of the master's business. The rule on this point is put as strongly in behalf of defendant as our books justify it, and some of those cases even go beyond the general rule.

"In determining whether a particular act is committed by a servant within the scope of his employment, the decisive question is not whether the servant was acting in accordance with the instructions of the master, but, was he at the time doing any act in furtherance of his master's business? If a servant having completed his duty to his master, then proceeds to prosecute some private purpose of his own, the master is not liable; but if the servant, while engaged about his master's business, deviates from the direct line of his duty to accomplish some personal end, the master's responsibility may be suspended, but it is re-established when the servant resumes his duty. Even if in violation of express orders a deviation is not an abandonment of the master's service." *Barmore* v. *V. S. & P. Ry.*, 85 Miss. 426, 70 L. R. A. 28; *Richburger* v. *Express Co.*, 73 Miss. 161, 31 L. R. A. 390, 55 Am. St. Reports, 620; *Railway* v. *Latham*, 72 Miss. 32; *Warehouse Co.* v. *Poole*, 78 Miss. 147, 84 Am. St. Rep. 620.

The assault of one railroad man upon another about railroad matters, on depot grounds, does not bind the railroad company for damages. *Railway Co.* v. *Harz*, 88 Miss. 681; *Andrews* v. *Railway Co.*, 86 Miss. 129. A conductor has an equal right with a private citizen to defend himself from unprovoked assault and to resent gross and wanton insult. *Galligly* v. *Railway Co.*, 83 Miss. 171.

By section 4882 of the Code of 1906 and chapter 80, Acts of 1908, express companies must keep offices, and it is of course the duty of the company to keep orderly offices, a place where either ladies or gentleman may safely go for the transaction of their business. The defendant owes some duty to the public in this regard, and as Bransford indicates in his testimony, there was imposed on him the duty of maintaining order and decorum in the office, expecially one frequented by ladies sending and receiving Christmas packages, and if a drunk-

en patron of the office created disorder, it was the plain
duty of the agent to eject him.  But certainly, as has
been held by our court in the *Galligly case, supra,* and other
cases, when insult and abuse was heaped upon the agent
by Wamble, the law did not compel him to stand help-
lessly by and make no defense whatever.  By section
1501 of the Code of 1906, it is provided that in all trials
for assault and battery or for assault, the defendant may
give in evidence in excuse or justification any insulting
words used by the person on whom the assault or assault
and battery was made and committed; and, in construing
that section, our court in *Barr* v. *State,* 21 So. 131, held
that an instruction that no language, however insulting,
will justify an assault and battery is properly refused.
That holding is equal to saying that gross insult may
justify assault in the minds of the jury.  *Barr* v. *State,*
21 So. 131; *Stone* v. *Heggie,* 82 Miss. 410.

The mere employment of a watchman to guard prop-
erty did not authorize him to shoot a trespasser who was
running away from the premises.  *Robards* v. *Bannon
Pipe Co.,* 113 S. W. 429, 18 L. R. A. (N. S.) 923.  A master
is liable for the acts of his servants only when the servant
acts within the scope of his authority.  To render a master
liable for the negligent act of the servant, it must be
within the scope of his employment.  *Doran* v. *Thomsen,*
71 Atl. 269.  Where a conductor stopped his train, pur-
sued a boy on foot into his father's house, with pistol in
hand, seized him and carried him off on the train, the
railroad company is not liable; the acts not being within
the scope of the conductor's employment.  *Gillian* v
*S. & N. O. Railroad Co.,* 70 Ala., 269.  Where a railroad
brakeman threw a stone at a boy attempting to board
the train, and struck a child near by, the company is not
liable for the resulting injury, the act of the brakeman not
being within his employment.  *Ga. R. R. & Banking
Co.* v. *Word,* 94 Ga. 124, 21 S. E. 288; see also *L. &. G.
N. R. R. Co.* v. *Cooper,* 88 Tex. 607, 32 S. W. 517.  Where

a servant employed in the delivery of goods by wagon, drives out of the way of his route for the purpose of visiting his home, the master is not liable for injuries to a child caused by the servant's negligent driving as he left his home. *Chicago Co.'s Bottling Co.* v. *McGinnis*, 51 Ill. App. 325. An employer is not liable for an assault by his servant on another which was in no way connected with the employment, and the employer was not present. *Cofield* v. *Northern Pac. R. R. Co.*, 51 Minn. 488, 59 N. W., 1005. To render a railroad company liable for an assault and battery by one of its servants, it should be shown that the company either directed or sanctioned the act of the servant. *Priest* v. *Hudson R. R. Co.*, 65 N. Y., 589. A deliberate assault by the elevator man of a storage warehouse company upon a person who has entered the warehouse on business connected with his storage contract cannot be said to be for his employer's benefit, so as to render him liable therefor. *Fairbanks* v. *Boston Storage Warehouse Co.*, 75 N. E. 737, 13 L. R. A. (N. S.) 422. A passenger who displays a persistent determination to disregard a proper regulation and by his wrongful conduct so exasperates a servant of the company as to unfit him for properly performing the duty he owes his master with respect to his treatment of its patrons, cannot justly complain that the company's servant lost his temper and resorted to unnecessary force in compelling observance of the regulations by the passenger. *Central Ry.* v. *Motes*, 117 Ga. 923, see also *City Elec. Co.* v. *Shropshire*, 101 Ga. 33. For the wrongful act of an employee of a railroad company resulting in injury to another, committed while engaged in the performance of the company's business in the line of his duty, the company is liable. But if while so engaged, upon account of some private feud previously existing or suddenly arising, wholly disconnected with his duties as such employee, and not pertaining to the business then in process of transaction (the company then not owing to the other person the duty

of personal protection), he commit injury upon the person of another, the company would not be liable. *C. & R. Ry. Co.* v. *Christian*, 97 Ga. 56. A passenger misses his train and goes to a hotel and next day returns to see the checking of his trunk and gets into a fight with the agent; the court says: "If, however, the real purpose in returning to the station was not to look after or arrange for, the checking of the baggage, or to attend to other legitimate business with the agent, but merely to upbraid him for a real or supposed breach of duty occurring at an earlier hour of the day, and a difficulty thereupon ensued, the two met as ordinary citizens, and the railroad company had no concern in what passed betwwen them."

We quote especially from the Georgia court as follows:

"Did he have a cause of action for the shooting? But for his fault, the conductor would not have been brought into a state of excitement from danger and insult which unfitted him for discharging his proper duties, either to the company or to the passenger? Whether the conductor was more or less in fault than the plaintiff was in the shooting, certainly the plaintiff was more in fault than the company; because the plaintiff was there upon the ground, stirring up excitement and bringing on danger both to the conductor and to himself. He unfitted the conductor for exercising the care and prudence that were essential to guarding the interests of the company, and essentail to the performance in a proper manner of his duty to the company, or to the plaintiff. The plaintiff spoiled the instrument, and then sued the manager because the performer did not make good music. It was the plaintiff's fault that the conductor was out of tune; and though the conductor might not be altogether excusable for the shooting (according to his own evidence, however, he was excusable), the company was in no fault for it, and it would be unjust for the plaintiff to recover of the company, when he boarded its train violating the law (as we can well infer) by carrying upon his person a concealed weap-

on; violating the law again by swearing and using ob-
scene language; violating the law again by committing
an assault upon the conductor with a pistol, drawing the
pistol and presenting it at him, and violating the law by
general disorder and misconduct throughout the trans-
action up to the moment he was shot. We think the
court below was well warranted in granting the second
new trial. While a second verdict is a sacred thing, it
is less sacred than the law and the substantial justice of
the case. These required that another new trial be grant-
ed." *Peavy* v. *Ga. Railroad & Banking Co.*, 81 Ga. 487.
The master is not responsible for the independent torts
of his servant not done in business, but wholly on their
own account. *Moorehouse Company* v. *Cool*, 78 Miss.
147.

*Paine & Paine*, for appellee.

We presume to call the court's attention to that line
of authorities of our court which hold that "Where the
testimony is conflicting a verdict which is rendered on
instructions fairly presenting the issues and which is not
against the clear weight of evidence will not be disturbed."
This is but the law as decided as early as 4 Howard, 338,
and as late as the case of *Mitchell* v. *McGee and Alford*,
28 So. 234. Judge Fletcher in deciding that case said:
"As we see it all the material issues were fairly and fully
presented to the jury and we are not warranted in over-
throwing the conclusions reached by the jury. Again in the
case of *Hill* v. *Railroad Co.*, 79 Miss. 587, the court said:
"Upon a mere matter of damages where different minds
might and probably were arriving at different results
and nothing inconsistent with an honest exercise of judg-
ment appears the verdict should be left as the jury found
it." Again as to the conclusiveness of verdicts in general
our court says "that the verdict of the jury will not be
disturbed unless it is manifest from the whole record that

it was clearly wrong or other errors apparent on the record may have tended to produce it." See 39 Miss. 17; 42 Miss. 608. We respectfully insist that there is no fact and no error of law that will under the laws of our state authorize this court to reverse this case. Appellant may congratulate itself that a larger verdict was not rendered under the undisputed facts as appear from the record in this case.

Argued orally by *Geo. J. Leftwich* for appellant, and *Thos. F. Paine* for appellee.

COOK, J., delivered the opinion of the court.

The present case was begun in the circuit court of Monroe county by appellee against appellant, demanding judgment for damages, actual and exemplary, for personal injuries inflicted upon him by the agent of appellant while engaged about his master's business. A judgment was rendered upon the verdict of the jury awarding plaintiff one thousand dollars, from which judgment this appeal was prosecuted.

The testimony of plaintiff's witnesses amply warranted the finding of the jury, and if the jury adopted plaintiff's version of the facts—and they must have done so—defendant is to be congratulated upon the moderation of the jury. It was shown by this evidence that plaintiff was at the place of business of the express company upon a legitimate errand. He was talking with one of the employees of the company about an express package he was expecting to arrive for another party, whose written authority to receipt for same be produced. At an earlier hour in the day he had inquired for this package, and, being told that it had not arrived, he left the office, and, turning, he again made inquiries for the package, and was told that the agent had already informed him that the package was not there, but, if he did not choose to take the agent's word, he could examine the book him-

self.   While engaged in the examination of the book, the agent in charge of the office, evidently resenting his persistence, intervened, and, because plaintiff told him that he need not get up on his shoulder about it, the agent secured a bludgeon made of the end of the handle of a cant hook, and proceeded to belabor plaintiff over the head with it.   Being unable to handle the situation alone, the agent called on his son for help, and together they gave plaintiff a severe trouncing, inflicting serious and lasting injuries.   The defendant's witnesses told a different story; but, as it was purely a conflict in the evidence for the jury's unraveling, it is unnecessary to set out their version here.

Counsel representing the express company in the court below and here have assigned several errors, but only one will be noticed.   Plaintiff introduced in evidence, over the objection of defendant, a certified copy of the returns of the property of the express company, as made by the company to the railroad commission.   The secretary of the commission certified to this document, but it is said that it does not appear that the secretary was the custodian of the records.   Be that as it may, the document could have worked no harm to defendant.   It was probably offered to prove the wealth of defendant, but in, fact, proves quite the contrary.   It tended to show that this corporation, rather than being wealthy, was comparatively speaking, almost a pauper.

*Affirmed.*