DAVIS *v.* PRICE.

(Division A.    Oct. 22, 1923.)

[97 South. 557.    No. 23448.]

MASTER AND SERVANT.    *Master not responsible for servant's tort outside scope of duties.*

A master is not responsible for a tort committed by his servant while acting in furtherance of the master's business, unless the servant was also then acting within the scope of his appointed duties.

APPEAL from circuit court of Washington county.

HON. S. F. DAVIS, Judge.

Action by H. E. Price against E. D. Davis. From a judgment for plaintiff, defendant appeals. Reversed, and judgment rendered.

*Boddie & Farish,* for appellant.

The peremptory instruction asked by the appellant, defendant in the court below, should have been given. If this court affirms this case we respectfully submit that an employer has no way on earth of protecting himself against the unauthorized acts of any of his employees where the employee is attending to some business of his employers, no matter how far he may be acting outside of the scope of his employment. *Brown* v. *Jarvie Engineering Company*, 32 L. R. A. 605; *Valley* v. *Clay*, 92 So. 308; *Illinois Central R. Co.* v. *Green*, 94 So. 793. The evidence fails to warrant a recovery for the following obvious reasons, namely: Crane had no authority, and was acting beyond the scope of his employement to leave the ice cream factory to go and borrow a truck and attempt to deliver ice cream at the railroad station.

*Teat & Potter* and *Eugene Bogen*, for appellant in response to questions propounded by the court.

The two questions are: (1) What is the rule governing the liability of the master for a tort committed by his servant when acting beyond the scope of his normal duties because of an emergency which necessitated his so doing? (2) If there is such a rule of liability, is this case within it?

Under section 2227-A, Labatt's Master & Servant, the textwriten under the caption of "Scope of Authority Considered with Reference to the Circumstance that the Wrongful Act Was Done in an Emergency,' lays down two propositions upon which liability may be considered, to-wit: (1) "It may be adduced with reference to a con tention that the emergency in question was one of a kind that might be expected to occur more or less frequently in the course of the servant's employment, and that he might consequently be regarded as having been invested with an implied authority to deal with such emergencies in a certain manner whenever they should occur. The point of view is illustrated by several cases involving the liability of employers for conversion and for wrongful

arrests. (2) "It may be relied upon as the basis of an argument that, under the given circumstances, the servant was justified in doing something which was beyond the scope of his normal powers."

The facts in the case at bar do not permit of the application of the first proposition, or hypothesis, stated by Mr. Labatt. The second proposition comes nearer of application in principle, than the first.

The word "emergency," however, must be understood to denote a condition of such serious import as to compel the servant to do an act in relief of humanity, or of something of similar character. *Madars* v. *Shamokin*, 192 Pa. 542. A very great distinction between this case and the case at bar is that to deliver the cream was a mere incident, and of no more than casual import. It certainly cannot be said that a delivery of a can of ice cream to a customer would come within the rule spoken of as "emergency." See also *Ephland* v. *Missouri, P. R. Co.*, 137 Mo. 187, 35 L. R. A. 107; *Martin Bros.* v. *Murphree*, 96 So. (Miss.) 691.

The universal rule as laid down by the textwriters and oft repeated by numerous decisions is concisely stated in 18 R. C. L. 796, to-wit: "The law also recognizes that the servant is still an independent and responsible being, with capacity, which the master cannot efface or control, to engage in projects of his own, and does not include in the responsibility laid upon the master liability for those acts of the servant which are but the exercise of his freedom about his own affairs." The confusion that arises in this case is from the fact that after he had abandoned the scope of his employment he then engaged in a service for Davis, that is, he got the ice cream of Davis and undertook to deliver it to a customer of Davis. Now was Crane the servant of Davis in so doing, or was he a stranger and trespasser in law in so doing? He had no right or authority to borrow the truck, either express or implied, and no right or authority to lay his hands on the ice cream for the purpose of loading it on the truck, either express or implied, nor did he have any right or authority

to attempt to haul it to the station. It was the will of his master that he be present and supervise, control and manage the ice cream machinery. But he had taken a position antagonistic to his master. And although he may have thought that he was doing a service or kindness to his master or some one else, yet this proceeded from the independent agency of Crane and not from the implied or express authority of his master, Davis. This much might be said of the fireman in the case of *Illinois Central Railroad Company* v. *Green,* 94 So. 793, that the fireman may have thought that he was doing something for his master when he went back to evict Green, a trespasser, and shot him, but in truth and fact that was a voluntary project of his own, not by authority of his master, express or implied, and for which the fireman alone was responsible and not his master. See also *Fairchild* v. *New Orleans & Northeastern Railroad Co.,* 60 Miss. 931. Our answer to the interrogatory of the court, therefore, is that the duties of Crane were limited to the manufacture of the ice cream.

ACTS OF A SERVANT IN A SEPARATE DEPARTMENT OF THE MASTER'S BUSINESS. It is the contention of the appellee in this case that from the single circumstance that Crane was delivering the products of the plant to a customer at the time the injury occurred, that this establishes first, the relation of master and servant, and second, fixes a new scope of employment. This is a mere delusion and shadow. See *Slater* v. *Adv. Thresher Company,* 97 Minn. 305, 107 N. W. 133; *Palos Coal & Coke Co.* v. *Benson,* 39 So. (Ala.), 727; *Southern Railway Company* v. *Power Fuel Company,* 152 Fed. 917. The above cases are decisive of the question propounded by the court. The servant may use the property or instructions of his master in the commission of a tort, but before damages can be fastened upon his master, it must be affirmatively shown that he is acting for his master, engaged in the scope of his employment.

*Walton Shields,* for appellee.

Under this state of facts, the peremptory instruction was correctly refused. Surely Crane had the implied authority to do what he did do even though he was not expressly authorized to do so and even though he had general instructions not to drive the trucks, and having implied authority, his master is liable for his act done in the master's business. · The employer may be made liable for acts done in violation of his rules, order or instructions. 18 R. C. L. 798, and notes. See also *Barmore* v. *Vicksburg, etc., Railroad Co.,* 85 Miss. 426.

*Walton Shields,* for appellee, in response to the inquiry of the court.

The doctrine is that as emergencies might be expected to occur more or less frequently in the course of the servant's employment, consequently the servant might be regarded as having been vested with an implied authority to deal with such emergency in his discretion whenever the same arises. And that, therefore, under those circumstances, the servant was justified in doing something which was beyond the scope of his normal power. Ness being absent, it became one of the necessary incidents to Crane's employment to superintend on that occasion the delivery of ice cream. Under these circumstances Crane was clothed with the same discretion as Ness and if an emergency arose necessitating the · use of another automobile or dray to make the delivery of ice cream, Crane could exercise the same discretion that Ness would have been authorized to use. It is unnecessary to argue the contention that an emergency must be limited to a case where life and death is involved and cannot include a purely business emergency, where, as a matter purely of business, it becomes necessary to act to fill a customer's order.

*Teat & Potter,* for appellant in reply.

It is one of the fundamental principles of the law of master and servant that the master is not liable for will-

ful or negligent acts of servants committed outside of the scope of the servant's employment unless such action was directed to be done or ratified by the master. *I. C. R. R. Co.* v. *Bell,* 94 So. 793; *Moore Stove Co.* v. *Wells,* 111 Mass. 796; *A. & V. R. R. Co.* v. *Harz,* 88 Miss. 601; *Cotton Warehouse* v. *Poole,* 78 Miss. 147; *I. C. R. R. Co.* v. *Lofton,* 72 Miss. 32; *Fairchild* v. *N. O. & N. E. R. Co.,* 60 Miss. 931. The fact that Crane was undertaking to perform a duty for his master, that is, to deliver the ice cream in furtherance of the business of his master, is not alone sufficient to fasten liability upon his master, Davis, for a negligent act causing the injury complained of. It is absolutely necessary to the right of the plaintiff to recover that he show that Crane was acting within the scope of his employment. This doctrine is laid down with great precision and conciseness in the case of *Fairchild* v. *N. O. & N. E. R. Co.,* 60 Miss. 931.

The theory of this case in the court below is solely based upon the idea that Crane was engaged in the business of his master in the delivery of the ice cream and that this is sufficient to make Davis liable for his negligent acts. This is an erroneous conception of the law. It is absolutely essential that Crane should be acting within the scope of his employment. A most careful search of the record will confirm our statement that Crane was a volunteer, doing a reckless and dangerous thing out of and beyond the scope of his employment. It does not change the rule of law because Crane like the axemen went out and deliberately committed the wrongful act.

Argued orally by *J. A. Teat* for appellant.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a judgment awarding the appellee damages, because of an injury sustained by him by being struck by an automobile truck which was being driven by one of the appellant's employees.

The error assigned is the refusal of the court below to direct the jury to return a verdict in favor of the appellant. The appellant owns and operates an ice cream factory at which, according to the record, he employed, at the time the appellee was injured: Crane, whose duty was to make the cream and pack it ready for delivery; Ness, whose duty it was to superintend the delivery of the cream; and two truck drivers, whose duties were to drive two trucks owned by the appellant, and by which the cream was delivered either direct to purchasers or to the railway station for shipment. The appellant had arranged with a drayman by the name of Crockett to deliver the cream whenever his own trucks were unavailable for that purpose, which fact was known both to Ness and to Crane; and on several occasions Crane had called on Crockett to make such deliveries. On one or more occasions Crane had driven one of the appellant's trucks himself, but was directed by the appellant to abstain from so doing and to remain at the factory, where his duties required him to be. On the occasion in question a freezer of cream was due to be delivered at the railroad station for shipment to a customer. Ness was not at the factory, and neither of the appellant's trucks were available. Crane assumed to attend to the delivery of the cream, and without calling on Crockett to make the delivery borrowed a defective truck from a neighbor for that purpose, loaded the cream on it, and, as its owner was unwilling for the truck to be driven by the appellant's regular driver, drove it himself to the station, and on the way, because of the defect in the truck, struck and injured the appellee. The evidence is conflicting as to whether or not Crane knew of the defect in the truck.

Though Crane was acting in the furtherance of the appellant's business in delivering the cream, it is beyond doubt that in so doing he was, not only acting beyond the scope of the duty he was employed by the appellant to discharge, but also he was disobeying the appellant's express command, and the rule is that—"A master clearly cannot be held responsible for a tort committed in fur-

therance of his business, unless it is shown to have also been committed in the course of the appointed duties of the tort-feasor." 6 Labatt's Master & Servant (2d Ed.), p. 6704.

But it is said by counsel for the appellant that Crane delivered the cream himself because of an emergency which might be expected to occur more or less frequently, because of which he might be regarded as having been invested with an implied authority to deal therewith as the interest of the appellant might require. We are not called upon to determine whether there is such an emergency rule, and, if so, what it is, for the reason that no emergency here existed which necessitated the delivery of the cream by means other than that provided by the appellant, which were either by one of his own trucks or by Crockett, the drayman, with whom he had arranged for the delivery of his cream when neither of his trucks were available, which arrangement with Crockett was known to Crane and was acted on by him on former occasions.

Reversed, and judgment here for the appellant.

*Reversed.*