Natchez, C. & M. R. Co. *v.* Boyd, *et al.**

(Division A. Feb. 1, 1926.  Suggestion of Error Overruled March 1, 1926.)

[107 So. 1.  No. 25382.]

1. Master and Servant. *To render master liable act of assistant must be within the scope of servant's employment.*

   To render master liable for act of one procured by servant to assist him, the act must have been within scope of servant's employment.

2. Master and Servant. *Guarding against trespass not within scope of servant's duty to keep water in tank by pumping.*

   Guarding against the taking of water from tank by trespassers is not within the scope of a servant's duty to keep water in the tank, by pumping water into it for engines, so that master is not liable for tort of servant in guarding.

*Corpus Juris-Cyc. References; Master and Servant, 39 C. J., pp. 1279, n. 47; 1309, n. 22, 31.

Appeal from circuit court of Lawrence county.

Hon. J. Q. Langston, Judge.

Action by Mrs. Ada Boyd and others against the Natchez, Columbia & Mobile Railroad Company and others. Judgment for plaintiffs, and the named defendant appeals. Reversed and judgment rendered.

*Brady, Dean & Hobbs,* for appellant.

I.   The court erred in instructing the jury over the objection of the appellant, contrary to all the evidence in

the case, that Charles Barnett was authorized as a mat-- ter of law to employ Byzer Barnett and that, therefore, Byzer Barnett was the agent of the appellant. There is not the slightest hint in the testimony anywhere that any power to employ an assistant was vested in Charles Bar- nett. The testimony is positively to the contrary. There is no hint that Charles Barnett ever before exercised such an authority or that he was authorized to do so by the appellant. It must be perfectly apparent to this court that an employer might be willing to secure the services of an employee as a pumper, an agent, but would be wholly unwilling to delegate to an agent the authority to employ an assistant. The true doctrine is that the employ- er is not liable for the wrongful act of an assistant pro- cured by the employee unless the latter can be said to have been "clothed with an express or implied authority to employ." In other words, "if the employee had author- ity to employ assistants the employer would be liable." Otherwise, he will not be compelled to respond. See 18 R. C. L. 785; *Cooper* v. *Lowery,* 60 S. E. 1015; *Clough* v. *Power* Co., 31 Atl. 223; *F. W. Geiss* v. *Twin City Taxicab Co.,* 15 L. R. A. 382.

The doctrine, subject to certain qualifications, that a master is liable for the wrongful acts of a servant causing injury to a third person, when acting within the course of his employment and in furtherance of the master's business, is well settled. The cases decided by this court relating to this question may be classified as follows: (1)  Those cases wherein the question of liability of the master arises wherein the public is invited to transact business with the master through the employee, the lead- ing case in this class being *American Express Co.* v. *Rich- berger,* 73 Miss. 161.  (2)  Those cases wherein the ques- tion of liability on the part of the master arises through the acts of watchmen and officers on account of assaults made upon third persons, as in *Y. & M. V. R. R. Co.* v. *Hare et al.,* 61 So. 648; *Walters* v. *Stonewall Cotton Mills,* 101 So. 495.  (3)  Those cases relating to the master's liability on account of the wrongful act of an employee,

superior or otherwise, of an employer resulting in injury to another employee. See *Hines* v. *Green,* 125 Miss. 476.

All of the cases hereinabove classified hold subject to certain qualifications that the master is liable for the acts of the servant while acting in the course of his employment and in furtherance of the master's business. Although none of them are directly in point since the facts in this case are different from the facts in the case decided, still they are sufficiently so to deny the appellees the right of recovery.

It is apparent from all the cases establishing the doctrine upon which the appellees have squarely predicated their right to recover that the appellees were not entitled to recover for the reason that the testimony shows conclusively that William Boyd did not meet his death at the hands of an employee acting within the course of his employment and in furtherance of the master's business. Within the doctrine as announced by this court, see *American Express Co.* v. *Richberger,* 73 Miss. 161; *Y. & M. V. R. R. Co.* v. *Hare et al.,* 61 So. 648; *Walters* v. *Stonewall Cotton Mills,* 101 So. 495; *Hines* v. *Green,* 125 Miss. 476; *Hines, Director General of Railroads* v. *Cole,* 85 So. 199; *Great Southern Lumber Co.* v. *John May,* 102 So. 854.

*Fulton Thompson* and *R. H. & J. H. Thompson,* also, for appellant.

Was the pumper and station agent authorized to secure the services of a third person, Byzer Barnett who killed Boyd, to guard its water tank and to arrest or kill any person who might trespass on the company's property? Is the railroad company responsible for the acts of Byzer Barnett, and was he acting for the company when he shot and killed Boyd? Was he serving the company? These are the prominent issues presented by the pleadings. The burden of proof was on the plaintiffs to establish their claim on each of them by a preponderance of

the evidence. Our *prima facie* statute (Mississippi Code 1906, sec. 1985) has no application to the case.

The plaintiff's testimony wholly failed to show, it did not even tend to show, that Charles Barnett, the company's station agent and pumper, was authorized by his employer to guard the water tank; it showed only that he was the railroad company's station agent, and pumper. So far as concerned Byzer Barnett, the man who did the killing, the plaintiff's evidence showed that he was requested by his brother, Charles Barnett, the company's pumper, without authority from the company, to guard the tank at night to prevent it from being drained of water and that while so doing William Boyd, the decedent, appeared at the tank and opened one of its pipes causing the water to flow from it; plaintiffs claiming that the decedent went there to take a bath.

The circuit judge was manifestly of the opinion that a servant of a railroad company employed alone as a pumper to keep its tank reasonably full of water by pumping it into the tank from a well has, as a matter of law or necessary legal presumption, the duty of guarding the tank at night to prevent its being drained by unauthorized persons, and that the want of such authority cannot be negatived by testimony showing the non-existence of such authority. The trial judge was of the opinion and further held that a pumper so employed could not be shown by testimony not to have authority to employ or procure some other person to guard the tank and prevent its being drained of water.

*G. Wood Magee, Geo. N. Magee* and *W. J. Lee, Jr.,* for appellees.

Was the railroad company responsible for the homicide, assuming that Charles Barnett, the agent, was responsible therefor? This proposition involves the question as to whether Charles Barnett was acting within the scope of his authority and in furtherance of his master's business in watching and guarding the water

tank. The jury, with all the facts before them, said that Barnett was responsible for the killing. Was he, then, acting within the scope of his employment in watching the tank and while having it watched? We say, on the authorities before us, that he was.

We say that it makes no difference whether or not Barnett was directed or instructed to watch the tank. He was never instructed not to watch it. It was an implied duty of his to watch the tank because this act was implied from the scope of his employment and powers, and the test of liability is not that the particular act was commanded, but whether there was either express or implied authority for doing the act complained of by the plaintiff, .or in the customary legal phrase, "within the scope of the employment." See 18 R. C. L., secs. 253, 254, 255, page 793 and numerous authorities cited under these sections; 1 Thompson on Negligence, sec. 540, page 503; *Railroad Company* v. *Hare,* 104 Miss. 564; *Richberger* v. *Express Co.,* 73 Miss. 161; *Barmore* v. *Railroad Co.,* 85 Miss. 426; 1 Thompson on Negligence, sec. 544, page 512; *Walters* v. *Stonewall Cotton Mills,* 101 So. 495; *Dean et al* v. *Brannon,* 104 So. 173. So we say in answer to appellant's second proposition, assuming that Charles Barnett, the agent, was personally responsible for the killing, that he was acting .in the scope of his general powers when the killing occurred.

Was Charles Barnett authorized to secure his brother Byzer to watch the tank, and if so, was Byzer's act in killing Boyd the act of appellant? This court committed against appellant on this proposition. *Brown* v. *Express Co.,* 67 Miss. 260; *Carson* v. *Leathers,* 57 Miss. 650. Under this authority we say that the appellant was liable for the wrongful acts of the assistant, Byzer Barnett, and that Byzer's act in killing Boyd just as much saddles the appellant with liability as if the killing had been done by Charles Barnett, the agent. 1 Thompson on Negligence, page 545, sec. 589; *Hollidge* v. *Duncan,* 85 N. E. (Mass.) 186. In the case at bar it was the implied and express duty of the agent to look after the tank

and from this implied and express duty he had the implied authority to employ assistance.

But we can also put this case in another light. The record evidence in this case shows that Charles Barnett was present on the scene while the killing occurred; that he was present and ready to aid and assist the man who is said to have fired the fatal shot; that he put the killer there armed with a gun. We say, therefore, that he is as guilty of the homicide as his brother. So that, the appellant is liable, not only on the ground that Byzer, the assistant, did the killing, but on the ground also that both Charles and Byzer killed Boyd.

Acts impliedly authorized or such as are within the general scope of the employment are held always to bind the appellant and hold him liable for injuries done by his servants; and in passing upon the question of liability or non-liability each case must be determined with a view to the surrounding facts and circumstances, the character of the employment and the nature of the wrongful acts. 18 R. C. L., page 795, sec. 254; *Robards* v. *Sewer Pipe Co.,* 132 Am. St. Rep. 394; *Railroad Co.* v. *Kirk,* 52 Am. Rep. 675.

Argued orally by *R. H. Thompson & T. Brady,* for appellants, and *G. Wood Magee,* for appellees.

SMITH, C. J., delivered the opinion of the court.

This is a suit by the widow and children of William Boyd, deceased, to recover from the appellant and Charles Barnett and Byzer Barnett damages for the death of William Boyd, and from a judgment in their favor the appellant has brought the case to this court. The Barnetts have not joined in the appeal.

The appellant owns and operates a short railroad line, and at one of its stations named Jayess has a water tank from which its engines take water. Charles Barnett was the appellant's agent at Jayess, and one of his duties was to "keep water in the tank for the engines."

The water was pumped into this tank by an engine, and it was the duty of Barnett to run it when necessary for that purpose. No other specific duty relative to keeping water in the tank was imposed on him. The repairs on this tank, when necessary, were made by other employees of the appellant, and no arrangement seems to have been made by the appellant for guarding its property from trespassers. Barnett suspected that the water in this tank was being drained therefrom by trespassers, and he watched the tank several nights, but failed to discover any one draining water therefrom. Thinking that he himself was being watched, and that another person would be more successful in discovering the one who was draining the tank, if it was in fact being drained, and also to be relieved from sitting up each night, he requested his brother Byzer Barnett, to guard the tank one night. While Byzer Barnett was guarding the tank, pursuant to his brother's request so to do, William Boyd appeared thereat and was shot and killed by him. Charles Barnett lived near the tank, and when the killing occurred had retired to rest. He heard his brother, Byzer, tell some one to "put up his hands" and then call to him saying, "Charley, I have caught him," to which he replied, "Hold him until I get there." Before Charles arrived at the scene, Byzer shot and killed Boyd.

According to the evidence for the appellant, Boyd, after he was told to put up his hands, tried to shoot Byzer, who then shot in self-defense. But according to the evidence for the appellee, the competency of which is challenged, Boyd made no demonstration whatever.

One of the assignments of error is that the court below erred in not directing a verdict for the appellant, and we will assume, as we must, in discussing it, that Byzer Barnett killed Boyd wrongfully.

One of the several elements which enter into the liability of a master for a tort committed by one procured by his servant to assist him in the performance of the master's work is that the act complained of must have

been committed within the course of the servant's employment and in furtherance of the master's business. 39 C. J. 1271. Charles Barnett's appointed duties (*Davis* v. *Price,* 133 Miss. 236, 97 So. 557) were to act as the appellant's station agent at Jayess and "to keep water in the tank for the engines." He was not instructed to prevent trespasses from being committed on the property of the appellant; consequently, so to do was not within the course or scope of his employment unless it was within the scope of his duty to keep water in the tank. It is true that preventing water being taken out of the tank by trespassers bore some relation to Barnett's duty to keep water in the tank, but it bore no relation to the manner in which he was to discharge that duty, which, it is manifest from the record, was by pumping water into the tank. Guarding the appellant's property from trespassers is a duty so different in character from that of pumping water into one of its tanks that a duty to do the one is not embraced in and cannot be implied from a duty to do the other.

The judgment of the court below, in so far as it affects the appellant, will be reversed, and the judgment which the court below should have rendered will be rendered here; that is, that the cause in so far as it affects the appellant be dismissed.

*Reversed, and judgment here.*