WELLS *v.* ROBINSON BROS. MOTOR CO.*

(Division A. March 25, 1929.)

[121 So. 141. No. 27798.]

*Corpus Juris-Cyc References: Master and Servant, 39CJ, section 1448, p. 1266, n. 23; section 1488, p. 1293, n. 80; section 1506, p. 1307, n. 15. On the question of liability of master for acts not within the scope of servant's employment, see annotation in 27 L. R. A. 164; 18 R. C. L. 794; 3 R. C. L. Supp. 849; 4 R. C. L. Supp. 1206. As to effect of retention of employee unauthorized act not deemed to be ratification, see 18 R. C. L. 802; 3 R. C. L. Supp. 850; 4 R. C. L. Supp. 1207.

*J. P.* and *A. K. Edwards* and *H. Cassidy Holden,* for appellant.

*F. J. Lotterhos,* for appellee.

Cook, J. The appellant, plaintiff in the court below, instituted this suit in the circuit court of the First judicial district of Hinds county against the appellee, seeking to recover damages for personal injuries alleged to have been inflicted in an assault and battery upon him by one Dyer Runnels, an employee and agent of the appellee, while the said Runnels was acting within the scope of his employment. At the conclusion of the plaintiff's testimony, the court below granted a peremptory instruction for the defendant on the theory that the evidence failed to show that Runnels was acting within the scope of his employment at the time he committed the assault and battery, and from the judgment and

verdict entered in pursuance of this instruction this appeal was prosecuted.

The facts as shown by the evidence for the appellant were substantially as follows: The appellant was a student at Mississippi College, and with his wife resided at Clinton, Mississippi, while his friend and neighbor, Dyer Runnels, was employed by the appellee as an automobile salesman. The appellant had placed an order with a Ford dealer for a Ford automobile, but the time when this automobile could be delivered was uncertain. Runnels, as the agent and salesman of the appellee, undertook to interest the appellant in the purchase of a Whippet automobile; but the appellant informed him that he preferred a Ford and had already placed an order to be delivered as soon as the new Fords were on the market. Finally, however, Runnels induced the appellant to accompany him to the office and show rooms of the appellee, where he was shown what Runnels represented to be the corresponding parts of the Whippet and Ford automobiles. By comparison, he attempted to convince the appellant that the Whippet parts were larger and superior to the Ford parts. The appellant testified that he informed Runnels that he knew nothing about the merits of the different parts, and that Runnels replied, "I could not afford to lie to you knowing you as I do, and if you catch me in any misrepresentation, we will give you a new Whippet automobile." Appellant further testified that, after inspecting these alleged parts, he practically decided to purchase a Whippet; that he then went into the office of the manager of the appellee company and discussed the merits of the automobile for some time with him, and then closed the deal for the purchase thereof, paying cash therefor, and the automobile was delivered.

On the day after the appellant purchased this automobile, he was informed by the Ford dealer that the Ford for which he had placed an order was ready for deliv-

ery; and he also received information which led him to believe that Runnels had misrepresented the automobile when he showed him the alleged parts. Conceiving that he was obligated to take the Ford, he approached Runnels with a view of procuring a rescission of the sale of the Whippet. Runnels informed him that he had sold the automobile and had nothing further to do with it, and that he would have to take that matter up with the manager of the company, which the appellant said he would do. Two days later the appellant interviewed the manager in the office of the appellee, and informed him that he was obligated to purchase the Ford and requested that appellee rescind the trade. As a further inducement to the rescission of the trade, he informed the manager, in the presence of Runnels, that his salesman, Runnels, had misrepresented the parts of the two automobiles. Runnels denied the misrepresentation. The manager informed the appellant that the automobile would then necessarily be classed as secondhand, and that the company could not rescind the trade except at a discount of twenty per cent of the purchase price. Thereupon the appellant told the manager that he would like to consider the matter until the following day, and left the manager's office. As he was on his way out of the building and had reached a point near the front door of the building, he met Runnels and there engaged in conversation with him with reference to the automobile. The appellant testified that he said to Runnels that he wished he had never seen a Whippet, and Runnels replied, "Why Wells, you are getting the best car on the market for the price." The appellant then charged Runnels with having misrepresented the parts of these automobiles, and Runnels replied, "Don't call me a liar." The appellant persisted in his claims of misrepresentations, and Runnels warned him three times not to call him a liar, and then picked up the alleged connecting rod of the Ford and struck appellant one

blow on the head, inflicting a cut or wound one and one-half or two inches long.

The evidence shows that Runnels was only a salesman, and that the sale of the automobile had been negotiated by him, but finally closed by appellee's manager after a lengthy conference between this manager and the appellant. The sale had been consummated, the purchase price paid, and the automobile delivered. The proof shows that when the appellant approached Runnels to inquire about the possible rescission of the sale, he was informed by Runnels that he was only authorized to sell automobiles and that he would have to take the matter of cancellation up with Mr. Fyke, the manager. Acting upon this information, he, two days later, went to the office of the appellee and had an interview with the manager in reference to the rescission of the sale and received from him the only terms upon which the rescission of the sale would be considered. Appellant then requested the privilege of considering these terms for one day before finally deciding what action he would take. Having concluded his business with the appellee company, he was leaving the building, when he suddenly met Runnels and engaged him in conversation in which he accused Runnels of misrepresentations made when he was attempting to sell him the automobile.

At that time, appellant had no further business with the appellee, and the conversation which ensued was a private matter between him and his former friend and neighbor; and Runnels' resentment against the charge of unfairness and misrepresentation, which finally resulted in the blow being struck, was a matter entirely personal to himself, and in assaulting the appellant Runnels was acting wholly without the scope of his authority and employment, and consequently the appellee was not liable for this unauthorized act of its employee unless such act was ratified by its subsequent conduct.

*American Ry. Express Co.* v. *Wright,* 128 Miss. 593, 91. So. 342, 23 A. L. R. 127; *L. & N. R. R. Co.* v. *Corlander,* 129 Miss. 24, 91 So. 699; *A. & V. Railway Co.* v. *Harz,* 88 Miss. 681, 42 So. 201.

The appellant contends, however, that if it should be held that the act of this agent was not within the real or apparent scope of his authority, still the appellee is liable for the reason that it ratified the act by retaining this salesman in its employ; and, in support of this contention, he relies upon the case of *Pullman Co.* v. *Alexander,* 117 Miss. 348, 78 So. 293, in which the court said that: ''Ratification of the agent's wrongful and oppressive conduct by the principal may be shown by the fact that the servant is continued in the employment by the principal after notice of the commission of the willful wrong.'' In that case the one question involved and decided was whether or not an instruction authorizing the jury to allow punitive damages was properly granted. The tort complained of was committed by the servant while engaged directly in the discharge of the master's business and within the scope of his employment; and the court announced that if the wrong and injuries complained of had been inflicted in this state, an instruction authorizing a recovery of punitive damages would have been correct, but that since the tort occurred in the state of Missouri, the rights of the parties must be governed by the laws of that state, under which the settled rule was that ''before the principal can be held for punitive damages it must appear from the proof that the principal either authorized the wrongful act in the first instance, or that after the wrongful commission by the servant was brought to the principal's notice, such principal, by some act on his part, ratified the same.'' It will thus be noted that the court was there considering ratification of a wrongful and oppressive act committed by the servant while acting in and about the master's business and within the scope of his au-

thority, and the language of the court must be limited to the question considered, and decided; and when it is so limited, this decision is not authority for the view that mere retention of a servant or agent in the employment will constitute a ratification of acts committed outside of the line of duty or scope of employment of the servant. While the fact of such retention of the offending servant in the employment of the master may be admitted in evidence as bearing upon the ratification, the mere retention of the servant in the employment will not constitute such ratification as will render the master liable for the unauthorized act. In our opinion, a correct statement of the rule is found in 18 R. C. L., p. 802, where it is stated that: "When there is no original liability for the act of a servant, because at the time of the negligence the servant was acting in his own personal business, the master does not become liable merely by reason of the fact that he thereafter retains the servant in his employ."

It follows from the views herein expressed that no error was committed in granting the appellee a peremptory instruction, and therefore the judgment of the court below will be affirmed.

*Affirmed.*