WESTERN UNION TELEGRAPH CO. *et al. v.* STACY.

(Division A.   Feb. 23, 1932.)

[139  So.  604.   No. 29235.]

**F. R. Stark,** of New York City, and **Jas. Stone & Sons,** of Charleston, for appellants.

288

S. C. Mims, Jr., and Cowles Horton, both of Grenada, for appellee.

Argued orally by **Phil Stone** for appellant.

**McGowen, J.**, delivered the opinion of the court.

This case, pending upon a suggestion of error, is reported in 132 So. 561. The opinion therein, in which the writer was the organ of the court, is withdrawn, and the following is adopted as the opinion of the court:

The appellee, Stacy, filed his declaration against the Western Union Telegraph Company and G. C. Harris, the appellants, seeking to recover damages on an allegation that, as the agent of the Western Union Telegraph Company, and while in the discharge and furtherance of its business, Harris "did unlawfully, wantonly, willfully and without cause or provocation, strike and assault plaintiff and did abuse and insult plaintiff, and did charge plaintiff with being 'cheap.' " The declaration further charged, in effect that the action of Harris, as the agent of the telegraph company, was an unlawful effort to secure a release of a claim which Stacy had against the Western Union Telegraph Company that Harris, the agent, was a trespasser upon the premises of Stacy at the time of the difficulty.

The telegraph company, one of the appellants, filed pleas of the general issue, and Harris filed a special plea to the effect that he acted in self-defense.

The case was submitted to a jury, the appellee recovered a verdict for one thousand dollars, and the court entered judgment accordingly.

The essential facts are these: Dr. Stacy delivered to the telegraph office a telegram which was "misdelivered," for the sending of which he paid the company thirty cents. When Harris, the agent of the company at Grenada, discovered the error, he sent a young lady em-

ployee to Dr. Stacy's office to settle the matter, supplying her with thirty cents of the company's money with which to refund to the doctor the amount paid by him for telegraphic service, and also with a release ·showing the payment of thirty cents, to be signed by the doctor, the release undertaking to relieve the company from any damage other than the price of the message. The young lady paid the thirty cents to Dr. Stacy, a dentist, at his office, but he declined to sign the release.

According to the testimony of Harris, it was necessary that he, as the agent of the company, should have this release to use in his settlement with the company, or else the latter would require him to account therefor. On learning of Dr. Stacy's refusal to sign the release, Harris went to the former's office, presented the release, and requested and urged the doctor to sign the same. The testimony in that connection is as follows:

" 'Doc, I want you to sign these papers' and I (Dr. Stacy) says 'Mr. Harris, I told the young lady I wouldn't sign them, and I don't mean to sign them,' and he (Harris) says, 'You know we all make mistakes,' and I says 'Yes, and we ought to try to correct them,' and he demanded—I call it demanding—me to sign it; he asked me the third time to sign it, and I told him that I would not sign the papers. . . . He just stepped back and said 'If you are that damn cheap I will just give you the thirty cents.' I says 'Young man who invited you in my office,' and he says 'Nobody,' and I says, 'Will you get out?' and he says 'You are not man enough to put me out' and when he said that I removed my glasses and took him by the arm and asked him to get out.

"Q. What did he do then? A. He resisted.

"Q. How many times did he strike you? A. It was so hot for a few minutes I couldn't tell you how many.

"Q. He hit you pretty hard? A. Yes, sir, one lick stung a little bit, the other licks didn't amount to anything.''

On cross-examination Dr. Stacy testified as follows:

"Q. Didn't you testify before that you hit Mr. Harris the first blow after he said that you were cheap? A. I don't remember that.

"Q. You don't say now that you didn't hit the first blow, do you? A. I couldn't say because I don't remember."

Harris, the company's agent, also stated that he did not know who hit the first blow. The record shows that this was a fist fight in which nobody was injured, the belligerents were about equally matched, and equally satisfied with the results of the encounter. The record does not disclose that there was any necessity for Dr. Stacy to resort to blows in order to eject Harris from his office—that they were both angry the record clearly reflects. Neither does the record show that Dr. Stacy used any more force in pushing or shoving Harris than was necessary, under the circumstances, to eject the latter from his office.

In the former opinion, we held that the burden of proof, in this state of facts, was upon the plaintiff in the court below; that therefore, since the burden had not been met, and there was no liability as to Harris, the agent, consequently, the principal, the telegraph company, was not liable. The briefs of counsel have convinced us that this holding is erroneous.

Upon re-examination of the record and mature deliberation, we are convinced that the question of liability vel non of Harris, the agent, was for the jury. The appellants had filed a special plea of self-defense; and it is well settled that this is an affirmative defense, and the burden of evidence as to this plea was upon the appellants, who were defendants in the court below. See Jamison v. Moseley, 69 Miss. 478, 10 So. 582; Lizana v. Lang, 90 Miss. 469, 43 So. 477; 2 R. C. L. 565.

We are further of the opinion that Harris was a tres-

passer in, and upon, the premises of Dr. Stacy after he was requested to leave the office; and that the appellee had the right to eject him by force, provided the jury were of the opinion that the appellee used no more force than was proper to accomplish such purpose. Ayers v. State, 60 Miss. 709; Cotton v. State, 135 Miss. 792, 100 So. 383.

As to Harris, the agent, the question there was for the jury, and the jury determined the issue in favor of the appellee, Dr. Stacy. There is no reversible error in so far as the judgment against the agent, Harris, is concerned.

2. Counsel for appellant, the telegraph company, contend that it was entitled to a peremptory instruction on the ground that, at the time of the trouble, its agent was not acting within the scope of his employment, nor was he engaged in any business for the appellant corporation. This "fight" did not occur in the office or on the premises of the telegraph company. The business of the telegraph company was to refund to Dr. Stacy thirty cents which it had received from him as the price of a telegram which was missent or misdelivered. Miss Bryant, who was furnished thirty cents by the agent, went to the office of Dr. Stacy to discharge the obligation of the telegraph company to him, and, upon her requesting him to sign a receipt for the thirty cents, he refused to do so; and the occasion of Harris' visit to his office was to secure a receipt, not for the benefit of the company, but in order that he might have a receipt as a voucher in settlement with his company, showing that he had discharged its obligation to Stacy. Presumably Harris, the agent, had put the thirty cents paid by Dr. Stacy in the cash drawer, and repaid that sum, through Miss Bryant, thereby discharging any liability of the appellant company therefor to Stacy. It may be seriously questioned that a party tendering money in discharge of an obligation can de-

mand as a condition of the tender the execution of a receipt therefor by the party to whom the money is tendered.

Under the evidence in this case, there was no liability on the part of the telegraph company to Stacy, nor was there any liability so far as the thirty cents was concerned on the part of the agent, Harris, to the telegraph company, whose money had been used, according to the record, in discharge of its obligation. Harris' visit subsequent to this transaction was purely on his own account in the belief that he must have the proper receipt for the money in order to acquit his company. In this he was mistaken, for his visit was purely one for the purpose of procuring a receipt with which to fortify himself in his settlement with the appellant company, a transaction in which Dr. Stacy was not concerned. It is true that Harris' visit to Stacy's office was related to the business of the appellant telegraph company, but it was not in furtherance of the master's business that a receipt for the repayment of the thirty cents be obtained, but it was in the course of Harris' own interest, and was a matter in which he alone was concerned, and in which the appellant company was not interested; and his action in using such language as to provoke the anger of the appellee to such an extent as to cause him to order Harris from his office or premises, and thereafter engage in a fight, was purely Harris' own private business.

The main case upon which counsel for the appellee, Stacy, rely, is that of Richberger v. Express Co., 73 Miss. 161, 18 So. 922, 923, 31 L. R. A. 390, 55 Am. St. Rep. 522, which is perhaps the strongest case in our reports on this question. This case is premised by the statement of fact that express companies "keep offices for the transaction of its proper business, a business calling to its offices every day thousands of citizens, and in its dealing with its customers in its offices, in its business, it is bound

. . . 'for respectful treatment and for decency of demeanor.' " The opinion is predicated upon the idea that Richberger was demanding his rights, and the cursing, abusing, and maltreatment of citizens in the office of the company by its servant while in the act of transacting business with the company is part of the res gestae. The court repudiated, in this case, the doctrine that a master is never liable for the willful and malicious acts of his servant, and announced that the true doctrine is, whether or not the injurious act complained of was done in the course of the servant's business.

In the case at bar on this question, there is no conflict in the evidence. The fact is that it is all based upon the evidence of the agent, Harris. It then becomes a question for the court to decide whether or not the wrongful act complained of was committed for purposes of his own, and not incident in the course of his employment, as agent of the appellant telegraph company. We do not think the rule we have here announced is in conflict with Barmore v. Railroad Co., 85 Miss. 426, 38 So. 210, 70 L. R. A. 627, 3 Ann. Cas. 594; Southern Express Co. v. Wamble, 103 Miss. 481, 60 So. 642; Hines v. Green, 125 Miss. 476, 87 So. 649; Walters v. Cotton Mills, 136 Miss. 361, 101 So. 495; Wise v. Peugh, 140 Miss. 479, 106 So. 81; Primos v. Gulfport Laundry & Cleaning Co., 157 Miss. 770, 128 So. 507, and the conclusion we have reached here is consonant with all these decisions. Entertaining these views, we are of the opinion that the master was not liable for the tortious act of his servant when engaged in his own private business, and not within the course of the servant's employment or in furtherance of the master's business. See Natchez, C. & M. R. Co. v. Boyd, 141 Miss. 593, 107 So. 1. The suggestion of error is sustained; the former judgment is set aside; and a new judgment will be entered in accordance herewith.

Affirmed as to Harris; reversed, and judgment for Western Union Telegraph Company.