LOPER *v.* YAZOO & M. V. R. Co.

(Division A.   Jan. 23, 1933.)

[145 So. 743.  No. 30280.]

W. W. Ramsey, Brunini & Hirsch, and Thames & Thames, all of Vicksburg, for appellant.

Hirsch, Dent & Landau, of Vicksburg, and Chas. N. Burch, H. D. Minor, and C. H. McKay, all of Memphis, Tenn., for appellee.

Smith, C. J., delivered the opinion of the court.

The appellant says that he was forcibly ejected from an engine of the appellee by the fireman thereof, and injured. He sued the appellee for damages alleged to have resulted to him therefrom. At the close of the evidence, the court directed a verdict for the appellee, and there was a judgment accordingly.

The evidence of the appellant is, in substance, that he was riding, as a trespasser, on the back end of the tender of one of the appellee's engines; that he was ordered off by the fireman of the engine, got down "between the rods of the car," and was then knocked off by the fireman with a lump of coal. This was denied by the fireman.

Two rules promulgated by the appellee for the guidance of its employees read as follows:

"Rule E. Employees must render every assistance in their power in carrying out the rules and special instructions and must report to the proper official any violation thereof."

"Rule 727. No person, except employees in discharge of their duties, will be permitted to ride on an engine, or in a baggage, mail, or express car, without a written order from the proper authority."

These rules, among others, were printed and distributed to the appellee's employees, and this fireman was familiar therewith.

The fireman and his engineer testified that the fireman had no authority to eject trespassers from an engine, but that his duty was to report the presence of trespassers thereon to the engineer.

The following questions and answers appear in the fireman's cross-examination:

"Q. Suppose I would get on the cab of the engine without permission, and I was sitting on your seat on the left hand side, what would you do about that? A. If you didn't have a written order to get there I would stop the train and put you off.

"Q. That would be your duty to do that? A. The rules require that no one is allowed on the engine except those that have work to do.

"Q. They must have a written order from the Master Mechanic? A. Yes, sir.

"Q. And you would stop and put me off the engine? A. Yes, sir.

"Q. The tender is part of the engine, is it? A. Yes, sir. . . .

"Q. Suppose I had gotten out of your way and moved my place from your box, but was still on the engine without authority under the rules, without a permit from the Master Mechanic, you would let me stay there indefinitely? A. I would tell you to get off.

"Q. Suppose I didn't get off? A. I would call an officer of the law. I would call the conductor; he is supposed to be the law until he can get a peace officer, and put you off."

Rule E does not restrict employees to any particular method of enforcing the appellee's rule prohibiting trespassers from riding its engines, and no other written or printed rule so doing was introduced in evidence. The testimony of the engineer and fireman that a fireman has no authority to eject trespassers from an engine of the appellee may have been, as from the evidence seems possible, only their interpretation of rule E; but we will assume that another rule or special instruction by the appellee so provides. From this it follows that this fireman was not authorized to eject trespassers from the engine, but, with this modification, was charged with the

duty of rendering every assistance in his power to prevent trespassers from riding thereon, including the duty of reporting their presence thereon to the engineer in charge thereof.

The appellee is not liable for the acts of its fireman in ejecting the appellant from the engine, unless in so doing the fireman acted within the scope of his employment, or, as sometimes expressed, "within the scope of his appointed duties."

The phrase "scope of the employment," adopted by the courts for the purpose of determining a master's liability for the acts of his servants, has "no fixed legal or technical meaning," 39 C. J. 1282; and "the ultimate question is whether it is just that the loss resulting from the servant's acts should be considered one of the normal risks of the business in which the servant is employed which that business should bear." A. L. I. Rest. Agency, Tent. Draft No. 5, p. 53. The matters of fact usually taken into consideration in answering this question are set forth in section 454, A. L. I. Rest., supra, one of which is "whether the master had reason to expect that such will be done." Little, if any, difficulty arises therein except in cases, as here, wherein the servant's conduct was in excess of that authorized.

The consensus of authority, and the rule of this court, is, the fact that a servant's conduct was unauthorized does not bring it without the scope of his employment, provided it is "of the same general nature as that authorized, or incidental to the conduct authorized." A. L. I. Rest, supra, sec. 454; Southern Ry. Co. v. Hunter, 74 Miss. 444, 21 So. 304; Barmore v. Vicksburg, Shreveport & Pacific Railway Company, 85 Miss. 426, 38 So. 210, 70 L. R. A. 627, 3 Ann. Cas. 594; Walters v. Stonewall Cotton Mills, 136 Miss. 361, 101 So. 495, and Alden Mills v. Pendergraft, 149 Miss. 595, 115 So. 713.

Whether a servant's unauthorized conduct is of the same general nature as that authorized or incidental to

the conduct authorized is a question of fact arising in each case on the evidence, and must be considered and determined as all other questions of fact are. If the evidence relative thereto is in conflict, or, if not, and only one reasonable inference can be drawn therefrom, the question is for the decision of the judge; but, if there is conflict therein, or more than one reasonable inference can be drawn therefrom, the question is for the decision of the jury under proper instructions. Ill. Cent. R. Co. v. Latham, 72 Miss. 32, 16 So. 757; A. L. I. Rest., supra, p. 52, and 39 C. J., p. 1362.

The evidence from which the scope of this fireman's employment must be determined is not in dispute, so that we come at once to the inferences that can reasonably be drawn therefrom.

The act of ejecting a trespasser from an engine, and the act of reporting his presence thereon, may be different in kind; but that fact is not conclusive, for, when considered in the light of the ultimate object to be accomplished, they will appear to be similar in quality, and the second to be incidental to the first; and an unauthorized act is incidental to an authorized act, though different in kind, if it is subordinate and pertinent thereto, provided it "be something within the ultimate objective of the principal, and something which it is not unlikely that the servant might do." A. L. I. Rest., supra, p. 55; Southern Railway Co. v. Hunter; Walters v. Stonewall Cotton Mills, supra, and Alden Mills v. Pendergraft, supra.

The purpose which the appellee sought to accomplish by promulgating rule 727 was the prevention of trespassers from riding on its engines and cars; and the ultimate act to be done, when necessary for the accomplishment of this purpose, is the ejectment of trespassers from its engines and cars. This fireman was charged with the duty of aiding the appellee to accomplish this purpose, and specifically with the duty of reporting the

presence of trespassers on an engine to the engineer thereof.

Under these rules, it may be that the natural and ordinary thing for a fireman to do, on discovering a trespasser on an engine, on which he is at work, would be to eject him therefrom before reporting him to the engineer, and therefore not an unlikely thing for him to do. If this is true—and it cannot be said, as a matter of law, that it is not—the appellee had reason to expect that the fireman would do so, and therefore his act in so doing was within the meaning of the phrase "scope of the employment." Moreover, disobedience of servants to instructions as to the particular manner in which their duties should be discharged is so frequent as to become a matter of common knowledge of which employers must take notice. This is in accord with, and to so hold is necessitated by, Southern Railway Co. v. Hunter, supra. In that case, a flagman, on discovering a trespasser on the train, knocked him therefrom and injured him. His duty, on discovering a trespasser on the train, was to carry him to the conductor, and, if the conductor so directed, to stop the train and put him off. The court refused to direct a verdict for the railroad company. This ruling was approved by this court without any discussion of the underlying reasons therefor, but these reasons are apparent. Though the flagman was not authorized to eject trespassers from the train unless and until the conductor so ordered after he had carried such trespassers to him, it was not unlikely—in fact, it was probable—that he would eject them without waiting for an order therefor from the conductor. The case can rest on no other ground.

Cases may be found in other jurisdictions both in conflict and in accord herewith.

The cases relied on by the appellee are not in conflict, but, in so far as they are applicable, are in accord herewith. In Illinois Cent. Railroad Company v. Green, 130

Miss. 622, 94 So. 793, a fireman whose conduct in ejecting a trespasser from the train was complained of, was not shown to have any duty whatever relative to the ejectment of trespassers therefrom, and the court held that none such could be implied. In Southern Railroad Company v. Garrett, 136 Miss. 219, 101 So. 348, the conduct of the servant complained of was personal to himself, and not in furtherance of his master's business, as was also the case in Wells v. Robinson Bros. Motor Co., 153 Miss. 451, 121 So. 141, and Western Union Tel. Co. v. Stacy, 162 Miss. 286, 139 So. 604. In Craft v. Magnolia Stores Co., 161 Miss. 756, 138 So. 405, Davis v. Price, 133 Miss. 236, 97 So. 557, and Natchez, C. & M. R. Co. v. Boyd, 141 Miss. 593, 107 So. 1, the conduct of each of the servants complained of was such a complete and unlikely departure from his authorized conduct as not to charge the master with reason to expect it.

The request of the appellee for a directed verdict should not have been granted. All that we here decide is that the evidence does not support the holding of the court below that no inference can be drawn therefrom other than that the act of this fireman in ejecting the appellant from the engine, if he so did, was without the scope of his employment. Whether a contrary inference appears therefrom so clearly as to justify the court in so holding without submitting the question to the jury is not before us.

Reversed and remanded.