Kyle K. VESS and Dr. David A. McCoy,
D/B/A Aeronaut Air Service,
Plaintiffs,
v.
David M. GARDNER, Defendant-Cross
Plaintiff,
v.
McCOY FLYING SERVICE, INC.,
Third-Party Defendant.
Civ. A. No. 3438.

United States District Court
S. D. Mississippi, S. D.
Aug. 6, 1968.

David Cottrell, Jr., Gulfport, Miss., for plaintiff.

Walter L. Nixon, Jr., Clyde Hurlbert, Biloxi, Miss., Boyce Holleman, Gulfport, Miss., for defendant.

Thomas H. Watkins, Jackson, Miss., for third party defendant.

WILLIAM HAROLD COX, Chief Judge.

The facts in this case are not complicated. A statement of established material facts in proper context will assist in an understanding and disposition of the motions before the Court. Kyle K. Vess and Dr. David A. McCoy, d/b/a Aeronaut Air Service live in Birmingham, Alabama. Those individuals on June 27, 1966 owned a DC–3 airplane which they kept parked near the McCoy Flying Service, Inc. establishment at the Municipal Airport in Gulfport, Mississippi. This plane weighed in excess of 12,500 pounds and was not certified for charter service.

Dr. McCoy owned all of the stock of McCoy Flying Service, Inc. which maintained a plane charter service establishment at said municipal airport under the

management of his daughter. That corporation owned a Beachcraft plane which it ordinarily used in such charter service. David M. Gardner is a humorist of national recognition who performs frequently in the Mississippi Coast area. He frequently chartered planes from the McCoy Flying Service, Inc. for private flights to New Orleans, Memphis and other such points. That service advertises in the yellow pages of the telephone book as being available to the public for such charter flights. On one occasion Gardner chartered a plane from said McCoy Flying Service, Inc. and was carried to New Orleans in said DC–3 airplane for hire.

On June 26, 1966 Gardner, by telephone, engaged a charter flight with McCoy Flying Service, Inc. to New Orleans for the morning of June 27. McCoy Flying Service, Inc. selected and employed a pilot of its choice and selected the plane for that flight. It is noteworthy that the corporate manager was not present on duty when this flight departed the airport.

The Beachcraft would not start. The pilot deplaned and requested the passengers to board the DC–3 plane nearby which was gassed and said to be ready to go. The pilot went into the McCoy Flying Service, Inc. office and got his flight bag and he and his co-pilot entered the DC–3 plane and requested his passengers to get aboard which they did for the chartered flight to New Orleans which had been previously arranged through said corporate establishment.

That flight was ill-fated and resulted in the loss and complete destruction of the plane and the death of the pilot. The co-pilot and the passengers survived with varying serious injuries. That plane in flight fell to the ground and caught on fire and burned. It is a miracle of the age that anybody on that flight even survived.

It is not necessary to chronicle the many improvident imprudent and negligent acts of that pilot, now deceased, which proximately resulted in that accident. The landing gear on the DC–3 would not retract but the pilot left the airport and continued enroute to New Orleans until the engine overheated and forced him to turn back, but too late. Vess and McCoy sued Gardner for converting their airplane and for its destruction. That claim was denied by the jury. Gardner sued Vess and McCoy and McCoy Flying Service, Inc. for his personal injuries sustained in that accident. The Court dismissed his claim against Vess and McCoy. The jury awarded Gardner a judgment in the amount of $80,000 against McCoy Flying Service, Inc. Vess and McCoy and McCoy Flying Service, Inc. interpose separate motions for judgment notwithstanding the verdict, or in the alternative for a new trial.

It seems to this Court as a very clear principle of law under all of the facts, circumstances and reasonable inferences that there was simply no conversion by Gardner of this airplane under such circumstances. Gardner never undertook to exercise any dominion or control over this DC–3 airplane. Gardner engaged passage on a charter flight to New Orleans and McCoy Flying Service, Inc. solemnly contracted with him as a private carrier holding itself out to the public to provide him with a safe and competent pilot and to provide him safe passage on an approved airplane to New Orleans. It did neither!

Instructions requested and denied were predicated upon erroneous views of the evidence, or were simply not supported by any evidence in this record to tenably conclude that Gardner converted this airplane to his own use.

That leaves for consideration a determination as to whether this pilot under these circumstances was the agent of McCoy Flying Service, Inc. or Gardner. Under no stretch of the imagination can it be said that this pilot under such circumstances was the servant or agent of Gardner, or that he (Gardner) was the lessee of any airplane. He never contracted or undertook to contract as

a lessee of any airplane (whether it were the Beachcraft or the DC–3) but he simply contracted with this private carrier for safe carriage on a chartered flight to New Orleans.[1] Gardner had chartered flights from this same establishment at this same location to other nearby points in the area on many occasions before that time. On one chartered flight with this same charter agency he went to New Orleans on this same ill-fated DC–3 plane which was partly owned by the sole owner of this charter plane business. It is noteworthy that the testimony shows that the owners of this DC–3 plane had expressly forbidden this pilot to use that plane prior to the date of this accident; but there was nobody in charge of this business when this flight departed and a menial employee of the establishment after assisting the plane in its take-off, called the manager of the establishment (McCoy's daughter) and notified her that this plane had been taken to New Orleans with the Gardner party by this pilot. She did not call the tower and have this pilot instructed to return to the airport, but simply told her employee to tell the pilot to call her when he returned. Surely, under the facts and circum-

stances in this record this flying service is everlastingly estopped to deny that this pilot on this flight was its agent and representative. A clearer case of estoppel could hardly be found. A plainer instance of ratification of this pilot's use of this plane in her charge would be extremely difficult to find. But this McCoy Flying Service, Inc. says that under the circumstances stated that this pilot was not acting within the real or apparent scope of his authority.[2]

McCoy Flying Service, Inc. says that the Court committed error in allowing Gardner's counsel to ask their witness as to the general reputation of the police chief for telling the truth. The answer of the witness was not objectionable as bolstering the chief's testimony, but the answer to such criticism is: That what the witness said to the chief of police at a former date about the condition of the DC–3 plane was not competent in the first place. It shed no light on any issue in this case between the McCoy Flying Service, Inc. and Gardner.

It is insisted that the verdict of the jury in this case is excessive and that the Court erred in allowing the jury to consider future losses. It is insisted that damages must be proved with sub-

---

1. It is mistakenly contended that liability is imposed on Gardner by § 7536–26(9), Mississippi Code 1942 which provides: "Operation of aircraft" or "operate aircraft" means the use of aircraft for the purpose of air navigation, and includes the navigation or piloting of aircraft. Any person who causes or authorizes the operation of aircraft, whether with or without the right of legal control (in the capacity of owner, lessee, or otherwise) of the aircraft, shall be deemed to be engaged in the operation of aircraft within the meaning of the statute of this state.

There is nothing in this record to support any contention that Gardner could have any possible liability to the owners of this DC–3 airplane. The estate of the deceased pilot and McCoy Flying Service, Inc. may be liable to Vess and McCoy for conversion, but not Gardner. That Mississippi statute has been twice construed and applied and in neither case in such a manner as is undertaken here. Carlton C. Hays et al. v. Ernest Morgan, (5 CA)

221 F.2d 481; T. L. Brunt v. Chicago Mill & Lumber Co. et al., 243 Miss. 607, 139 So.2d 380.

2. Davis v. Price, 133 Miss. 236, 97 So. 557 is cited to support that contention but it is clearly distinguishable here. There the offending employee was really not acting within the scope of his appointed duties and in furtherance of his master's business which he was employed to perform. Here, the party injured had a contract with McCoy Flying Service, Inc. to do that which the pilot was requested by that service to perform for them. In the *Price* case the injured party was a third person and not a party to whom it had contracted to do that which the employee was undertaking to do for his employer at the latter's instance. There was nothing arbitrary or capricious or high-handed on the part of this pilot under all of the circumstances on this occasion. The Court is constrained to disagree with that viewpoint and contention.

stantial accuracy and dependability and that the actual damages proved do not justify such an award. It is contended that there is no dependable proof in this record to justify or support such an award.[3]

■ Gardner did not make a good witness for himself on the question of damages. His wife and business agent did much better by him on that score. The award made by this jury is appreciably in excess of that which would have been awarded by this Court without a jury. But this record shows that this man was badly injured and is extremely fortunate even to be alive. The circumstances in this case are such as to very probably justify an award of punitive damages for the loose and careless conduct of this business in such a manner as to have permitted such a thing to happen to a member of the public using such facility. There has been a marked change in this man's work schedule since this accident. He has lapses of memory which greatly interfere with his "tying up the loose ends," as he expresses it in his business of imparting good humor to his audiences. Any impairment of that talent is striking at the vitals of his business. The doctor said that such an experience would likely result from such an accident as a medical probability.

Whether or not his income tax returns for any year would show any such loss is not the sole source for the answer to that point. Two years after the accident Gardner was still having this trouble with his performances and the doctor said that was reasonably to be expected. Damages for latent injuries and pain and suffering need not be proved or established with mathematical exactitude. It is within the province of an honest and fair-minded jury to say in their best judgment as a matter of common sense under all of the facts and circumstances as to what would be a fair award for this defendant's negligence under such circumstances. Such a jury has spoken. Their award does not shock the conscience of this Court. This Court is of the firm view that no injustice would be done under the circumstances by an approval of this award even though it is high.

■ No litigant in a civil case or even in a criminal case is entitled to a trial free of all error. A litigant is merely entitled to a fair trial without an error which would do violence to substantial justice.[4]

There was and is no basis in any substantial evidence in this record to support the claim of Vess and McCoy against Gardner for the conversion of

3. The medical proof in this case from the court appointed doctor shows that Gardner was rendered unconscious for an unknown period of time. The doctor said that he experienced a cerebral concussion. His inability "to tie up the loose ends" in his performances was said to prevail long after the injury. Sixteen months after the injury the doctor was unable to find any objective symptom of injury. But Gardner said that he has lapses of memory, temper tantrums and an inability "to tie up loose ends" in his performance. The doctor said these symptoms were common to persons who suffered such injury, particularly to the frontal lobes of the brain, and said that these symptoms were related to this injury. There is testimony and reasonable inferences from testimony in this record to show that these symptoms still exist after a lapse of more than two years. The testimony showed a very

definite personality change in Gardner, which has affected his work schedule. It is significant in this record that Gardner procured a prescription for pain medication from the court appointed doctor. He prescribed twelve percodan pills which is a Class A narcotic for pain.

4. Civil Rule 61 provides: "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

this airplane. That question, however, was presented with grave misgivings to the jury on proper instructions, and the jury correctly decided for Gardner against the plaintiffs. Their motion for a judgment notwithstanding the verdict, or in the alternative for a new trial is without merit and each will be overruled.

The motion of McCoy Flying Service, Inc. for a judgment notwithstanding the verdict, or in the alternative for a new. trial is likewise without merit, all for the reason indicated, and each will be overruled.

An order accordingly may be presented for entry herein.