EVAN COOK *v.* BENJ. WHITFIELD, PRESIDENT, &c.

1. EVIDENCE NOT MATERIAL TO THE ISSUE, INADMISSIBLE.—The issue of the liability of a party to pay a note given as an endowment to an institution of learning, is not affected by the application of the funds collected by the trustees, and evidence of such application is inadmissible.

2. FAILURE OF CONSIDERATION : EVIDENCE TO REBUT.—When the maker of a note, given as an endowment fund to an institution of learning, pleads failure of consideration and introduces testimony tending to show that the institution had "gone down," it is competent for the payee of the note to show that the trustees contemplated reorganizing and carrying on the institution in its full exercises, when they were enabled by means collected from the subscribers.

3. PROMISSORY NOTES: FAILURE OF CONSIDERATION RESULTING FROM MAKER'S DEFAULT.—A party cannot take advantage of his own wrong, and the maker of a promissory note cannot set up as a defence thereto, a failure of consideration which has resulted from his failure and refusal to comply with his part of the agreement.

4. INSTRUCTIONS TO JURY: ASSUMPTION OF FACT NOT PREJUDICIAL TO OPPOSITE PARTY.—A charge to the jury, which assumes a fact not prejudicial to the opposite party, and one which is well established by the testimony, is not improper.

5. PRINCIPAL AND AGENT: REPRESENTATIONS OF AGENT WHEN NOT BINDING.—The representations of an agent, when made without authority, or when contradicted by the express terms of the written contract made at the time of the representations, are not binding on the principal.

6. SAME: SAME.—The principal is not bound by an agent's representations, which are so manifestly absurd that it would be scarcely possible that any one would be deceived by, or rely on them.   36 Miss. 573.

7. SAME: SAME: MATTERS OF OPINION.—The agent cannot bind his principal in mere matters of opinion.

ERROR to the Circuit Court of Hinds county.   Hon. John Watts, judge.

A statement of the case will be found in the opinion of the court.

*Johnston & Johnston,* for plaintiff in error, cited *Mary Washington College* v. *McIntosh,* 37 Miss. R. 671.

*D. Shelton* for defendant in error.

HANDY, C. J., delivered the opinion of the court.

This action was brought to recover the amount of a note for five hundred dollars, executed by the plaintiff in error, and dated 2d March, 1853, promising to pay to the defendant in error as President of the Board of Trustees of Mississippi College, said sum, in five equal annual instalments, the first payable when $60,000 (of which the note was to be part) should have been subscribed or raised for said college, to bear interest at the rate of eight per cent. from the time the first instalment should become due.   The defendant in the court below pleaded:   1. The general issue.   2. Failure of consideration.   3. Fraudulent representations by the agent of the college, in obtaining the

note. 4. That the $60,000 were never subscribed. 5. That the agent promised to give the obligation of the trustees to refund the money if the college should ever fail, which obligation was never given.

It appears by the record, that the note sued on was executed and intended to be a part of the fund on which the Mississippi College was to be founded, and to take effect when sixty thousand dollars should be subscribed; and it was fully shown that that sum was raised on the 10th November, 1853, by donations and subscriptions in good faith, and which were believed by the officers of the institution to be good, and were so acted on by them. It was further proved, by the testimony of the president, that that day was the period recognized when the notes like the one sued on, which were denominated scholarship endowment notes, became absolute; that there was given to each subscriber what was called a primary certificate of scholarship, stating that when the subscriber should have paid his note for $500 to the college, he or his assigns should be entitled to a perpetual scholarship; and that after the payment of the note, a final certificate of scholarship to the party or his assigns, whereby he was entitled to a perpetual scholarship in the institution; that the trustees of the college treated the notes as valid subscriptions and proceeded to organize the regular college classes, to employ additional teachers, erect buildings, etc.; and the number of scholars increased largely, until the opening of the recent war, when it had reached two hundred and thirty, which was believed to be owing greatly to the completion of the subscription of $60,000, and the subsequent additions to it; that many of the students were on scholarships, but some paid tuition; that many of the scholarship notes had been paid in full and others in part, but there was yet due of principal and interest on notes taken before and after 10th November, 1853, more than $100,000 unpaid; and that the scholarship notes gave the right to tuition, but nothing more.

The plaintiff introduced Eagan, who was the agent for the college for obtaining subscriptions for six years, and who testified that he obtained subscriptions for more than $100,000, all

of which were executed *bonâ fide*, and in public addresses he read to the audience the primary and final certificates to be executed for scholarships, and that the former would be ready in a short time for those who executed notes, and would be left at the college. He could not say that all the notes received by him were good, but he believed them to be so, and that the trustees did not complain of them, to his knowledge.

The defendant then called J. N. Urner, president of the college, and proposed to prove by him what application had been made of the funds heretofore collected on the scholarship notes; to which the plaintiff objected, and the objection was sustained by the court, the defendant excepting.

This witness testified that the college had not gone down—that there are in it nineteen scholars and himself, the only instructor, but was not able to put students through the full curriculum of studies; that there is now a small amount in the college treasury, perhaps not as much as $100; that Eagan had authority to promise scholarships on receiving notes, but not that the money would be refunded if the college went down; that these scholarships have some value now, as the students can now enter the lower classes on them; that the college was amply endowed in the year 1858 by these subscriptions, as the trustees and witness thought; but no offer has been made to refund money paid on them, or to give up the unpaid notes; and that it was the understanding of all parties that the scholarships were to be perpetual on the payment of the notes; that if the college could collect all its scholarship notes, it would be able to go on prosperously, but this would depend mainly on the result of these suits; that it holds six thousand dollars of principal of the first mortgage bonds of the New Orleans, Jackson and Great Northern Railroad Company, on which no interest has been paid for some time, and the interest is expected to be paid punctually after this year; that the organization of the trustees of the college continued throughout the war; that the college has four buildings, a small library, and chemical and philosophical apparatus, and the purpose of the trustees is to carry it on and organize it fully, as soon as money

can be collected on these subscriptions. To this testimony, as to the purpose of the trustees, the defendant objected; his objection was overruled and he excepted.

The defendant then introduced the witness Eagan, who testified that he had no written or printed authority from the trustees when he took the note sued on, except the printed forms of scholarship notes and certificates above described; that he did not recollect having told the defendant or stated in any public address, that the money subscribed would be refunded if the college went down; that he stated that if the endowment was secured and the college went on, in his opinion the scholarships would be at par, and his cause and manner were persuasive and importunate; that he stated in a public address, that probably the principal would be allowed to remain in the hands of the subscribers, if the interest was punctually paid, but did not make any pledge that the principal would not be called for.

The defendant testified, as a witness, that Eagan stated that the principal was not to be used, but would be kept sacred, and that the money would be returned, if the college went down, and that the scholarships would always be at par; that when the $50 credited on the note sued on was paid, he asked for the scholarship certificate, but failed to get it; that in 1855 or 1856, he offered to give Eagan his note for $300 absolutely, if he would return the note sued on; that Eagan did not then or at any other time deny having made the pledges above stated which led to the making of this note, and said that the college would soon be adequately endowed; that defendant's son was a student at the college three months and a half on his scholarship subscription.

W. S. Hemphill, for the defendant, testified that he heard Eagan state, in a public address, in the presence of the defendant, that the principal of the fund of sixty thousand dollars would not be touched, but only the interest used; and that if the college failed, the money would be in the maker's own hands, as they had as much right to borrow the money as any other persons; that the scholarships would be at par, as there

35

would probably be so many of them that there would be little chance to get into the college except on the scholarships; that the college would be adequately endowed when the $60,000 was raised; that Eagan further stated that the first instalment of the notes would be due when $60,000 had been subscribed, and that the principal of the notes would not be called for if the interest was paid; and if the college went down, that the money, if paid, would be refunded. That Eagan did not make these statements as opinions merely, but as assurances; that he stated that the $60,000 were to be loaned out when paid.

James Henderson, for the defendant, testified in substance the same as the last witness.

L. B. Hemphill, for the defendant, testified that he was present at the address of Eagan, referred to, who stated that the scholarship notes were to be an endowment fund, and when collected, the principal would be loaned out, and only the interest used; that the subscribers could pay up the principal, or retain it in their own hands and pay the interest; that if the college went down, the money paid in would be refunded, and that the trustees would obligate themselves to do so; but witness did not know of any such obligation having been made by the trustees, or of any money having been refunded by them; that Eagan, in his address referred to, showed and read the forms of notes and certificates of scholarship, but not any refunding bond.

Eagan, being recalled by the plaintiff in rebuttal, testified that he stated in his address referred to, that as soon as the forms of primary certificates of scholarship had been printed, they would be left at the college for the various subscribers, who could get them there, and that the certificate for defendant was made out, and has been at his control ever since; that witness made no pledge in that address, beyond what was contained in the forms of notes and scholarships which were read by him at the time; that the scholarships were at a premium at the opening of the war, and were worth fifty-two dollars per annum in tuition.

1. The first error assigned is the exclusion of the testimony

of the witness Urner, to show what application had been made of the funds collected on the scholarship notes.

It is shown by the record that the note sued on was to be part of a fund of sixty thousand dollars, or more, for the endowment of the college ; and the question at issue was, whether the defendant was liable to pay his note. In determining that issue, it was certainly immaterial what particular application was made of that part of the fund which was collected by the trustees. If it was applied to the proper purposes of the institution, no complaint could be made by any one, or in any form. But if it was improvidently expended, or was applied to objects not connected with the institution, and not contemplated by the subscribers, that was a mere breach of trust of the trustees, for which they might possibly be held personally liable, and turned out of their office. But such misfeasance in office would constitute no valid reason why the defendant should not pay the sum which he had agreed to pay as a part of the endowment fund of the college, and which, by the very fact of misapplication had become the more necessary to sustain the institution. The investigation proposed was therefore irrelevant, and was properly excluded.

The second error assigned is, the action of the court in permitting the witness Urner to testify as to the intention of the trustees to reorganize and carry on the college, as soon as money could be collected on the scholarship subscriptions.

This ruling was manifestly correct. It was attempted, on the part of the defendant, to show that the college had gone down and failed, and hence that he was absolved from all liability to pay his note. The testimony showed that the full exercises and college course of the institution had been suspended for want of means to sustain it, but that it was still kept up to a limited extent and as to the exercises in the primary department, and that the board of trustees were still in office, and exercising their functions so far as the available means of the institution would permit. It was competent to the plaintiff to show that the institution had not been abandoned, and all efforts to maintain it given up ; that it had not

"gone down," so that the defendant was discharged from his obligation to pay his note; and it was pertinent and material to that point to show that it was the intention of the trustees to reorganize and carry on the institution, in its full exercises, when they were enabled to do so by funds collected from the subscribers. For it appears from the testimony that the funds subscribed are amply sufficient, when collected, to carry on the institution according to the original plan, and that it is still kept up to the extent of its means on hand.

The next error assigned is the 11th and 14th instructions given in behalf of the plaintiff, which are as follows:

"11th. Upon the question of consideration, the subscribers cannot cause the suspension of the college by refusing to pay, and then insist on the suspension as a defence to their notes; nor can defendant, so refusing to pay, avail himself of any supposed promise by Eagan to refund, if the college went down."

"14th. If the jury believe, from the evidence, that the defendant and his co-subscribers, by their failure and refusal to pay, have prevented the college from going on as may have been contemplated when the subscriptions were made, then the defendant cannot be heard to allege that the college has 'gone down,' and the jury must disregard this pretext."

These instructions contain nothing but the familiar rule that a party shall not be permitted to take the benefit of his own wrong. The rule stated is pertinent to the facts of the case appearing in evidence, and the instructions are free from objection.

The next error assigned is, the 12th instruction granted for the plaintiff in these words:

"The scholarships were not the only consideration for these notes, if it be true that the subscriptions were reciprocal, and for a general object; if, therefore, defendant never availed himself of the scholarship, the note, if so subscribed, will be founded on a valuable consideration, and cannot for that reason be held void."

It is objected that this instruction assumed what was the

consideration of the note sued on, which was an instruction to the jury as to matter of fact.

In its terms the instruction does not appear to be liable to the objection urged against it. It left it to the jury to determine whether the subscriptions were reciprocal and for a general object, and if they so believed, then that the scholarship to the defendant was not the only consideration for the note. This was proper. But it was fully shown by the evidence that the subscriptions were made for the purpose of raising a fund of $60,000, or more, which, when subscribed and realized, was to be an endowment fund for the college. The testimony placed this beyond doubt or controversy, and it appeared to be conceded on both sides. If it had been assumed as a fact, under the circumstances, it would have been no error to the defendant's prejudice.

We think the instruction was properly given.

Lastly, it is insisted that the court erred in overruling the defendant's motion for a new trial.

Two grounds are taken in support of this assignment:

1. That there was a failure of consideration, because the college has "gone down," and the defendant can no longer have any benefit of his scholarship. 2. That the note was obtained upon false representations made by Eagan, the plaintiff's agent, the failure of which has resulted to the injury of the defendant.

On the first point, it is to be observed that the obligation of defendant was to pay his note as a part of the endowment fund on which the college was to be organized; and, as part of the plan, he was to be entitled to scholarship in the institution on the payment of the money. This obligation the defendant failed to perform; which, together with similar failures on the part of other subscribers, to a large amount, caused the suspension of the full exercises of the institution. It is clear that, under such circumstances, the defendant cannot absolve himself from his liability. His own failure has contributed to cause the suspension of the college exercises, and he can take no advantage of that wrong. But it is clear that the college has not

" gone down " in any sense that would put an end to his obligation. It is still exercising its functions, to the extent of its means, with its board of trustees performing their duties and its organization preserved. And it only remains, according to the evidence, for the subscribers to perform their contracts and pay their subscriptions, in order to restore it in its full course. There is therefore no failure of consideration as to the note sued on.

2. The alleged false representations consist of the statements of Eagan relied on by the defendant. There is conflict in the testimony as to whether these statements were assurances or pledges made by Eagan, or mere expressions of opinion; and if they were matters of a controlling character in this suit, it might be well said that the verdict of the jury sustaining Eagan's version of the statements should be taken as conclusive.

But what is the nature of these representations? They are in substance : 1. That the principal was not to be used, but was to be kept sacred, and the subscribers could pay up the principal or retain it in their own hands and pay the interest. 2. That the money would be returned if the college went down. 3. That the scholarships would always be at par.

As to the first statement, it is clear that it is repugnant to the positive terms of the note signed by the defendant, by which he agreed to pay the sum subscribed in five instalments annually, the first to be paid when $60,000 should be subscribed, with interest from the time the first instalment fell due. The representation, if made, was without authority on the part of the agent, and was contradicted by the expressed terms of the defendant's contract. It was therefore not binding on the board of trustees. *Ellison* v. *Mobile & Ohio Railroad* (36 Miss. 573).

The statement that the money would be returned if the college went down, could scarcely have deceived the defendant. For if the college had gone down, it must have been an entire failure both in organization and in means; for it can hardly have been supposed that it would fail in organization and in its exercises as a college, unless its means of support had also failed. Who, then, was to refund the money, and where were the means

to do so to come from? The assurance is absurd, and it is scarcely possible that the defendant could have relied on it. But, apart form this, the college has not gone down ; and if the pledge were made and obligatory on the plaintiff, the defendant would not be entitled to demand the refunding of the money, and of course he cannot claim that his note is discharged on this ground. 3. The statement as to the value of the scholarships is clearly mere matter of opinion, and the witness Eagan states his reason for his opinion. It did not affect the legal rights of the plaintiff, and the error of that opinion constitutes no ground of defence to this action.

Upon a view of the whole case, we are satisfied that the judgment is correct, and it must be affirmed.