LANCASTER *v.* PITTS.

(Division A.  May 27, 1929.)

[122  So.  531.  No. 27931.]

*E. C. Fishel,* of Richton, *W. J. Pack* and *W. L. Pack, Jr.,* both of Laurel, for appellant.

*Jeff Collins,* of Laurel, for appellee.

Argued orally by *W. J. Pack,* for appellant, and by *Jeff Collins,* for appellee.

McGowen, J., delivered the opinion of the court.

Appellee, Pitts, sued appellant, Lancaster, for damages based on malicious prosecution in causing appellee to be criminally prosecuted for trespass in cutting trees belonging to appellant and on his land.

Upon an issue made up by the pleadings, the cause was submitted to a jury, which returned a substantial verdict in favor of appellee; judgment was accordingly entered, and from that judgment appellant prosecutes an appeal here.

Appellant was refused a peremptory instruction by the court below, and this refusal is assigned here as error. There are other assignments of error, but we shall notice only this one, as we think the court below should have granted the peremptory instruction asked for by the appellant.

It is contended by the appellant that it was incumbent upon appellee to both allege and prove that appellant's action in instituting criminal prosecution was without probable cause.

We are of opinion that the record in this case discloses that appellant acted upon probable cause not only from the proof offered by him, but from the whole record in the case.

Appellant made affidavit against appellee charging that appellee, Pitts, "did unlawfully trespass" on the land (describing it), "by cutting one hundred and two pine and hardwood trees," and upon that affidavit appellee was arrested. On the day of the trial appellee

and appellant both being in open court, counsel for appellant dismissed the prosecution, and appellee was discharged from custody by the justice of the peace.

The facts upon which we base our conclusion are as follows: On a certain day, before the institution of the prosecution, appellant discovered several men cutting timber on what he conceived to be his land; went where the people were cutting, and notified them not to cut any more timber, that they were cutting timber on his land, and that they were over their lines. One of the timber cutters said to him, "I can show you where the line is," to which the appellant replied: "Hell, I don't need anybody to show me the line, I know where the line is." Thereafter appellant, accompanied by his son, took a pocket compass and ran out his line which showed that the appellee had cut one hundred and two trees on appellant's side of the line so run by him. Appellant then went to appellee's home to notify him of the trespass, but failed to find him, and on the third day made the affidavit upon which the prosecution was based. The timber cutters stated, at the time, that they were cutting timber for and under the directions of appellee, Pitts. Some time prior to this incident, appellant had complained to appellee that he was cutting appellant's timber on another place, and appellee promptly paid for the trees claimed to have been cut by him which belonged to appellant. Subsequent to the dismissal of the suit, and after the institution of the damage suit, appellant had the county surveyor to run the line in the presence of appellee and O'Donnell, owner of the land from whom appellee claimed to have bought the right to the timber in question, the lands of said O'Donnell and Lancaster, the appellant, adjoining, and, according to this survey, it was disclosed that forty-one trees belonging to appellant had been cut by appellee's employees. Pitts, the appellee, and O'Donnell both expressed themselves as being satisfied with the line as run by the county surveyor. Witnesses for

the appellee contended that more than ten years ago, on different occasions, a line had been run by two different surveyors, and that markings had been made on trees, and that Pitts was cutting timber to this particular line. There was no written contract between Pitts and O'Donnell. Pitts testified that he had no reason to see Lancaster when he was notified by his timber cutters of Lancaster's complaint that he was going to cut to the line which O'Donnell had showed him regardless. The county surveyor testified, on behalf of Lancaster, that this alleged line made ten years ago was curved and crooked, and not a straight line, and the evidence tended to show that it was a very unusual line for a surveyor to have run. Pitts further testified that he was directing the cutting, and was with his timber cutters daily, and he was permitted to prove, by two witnesses, that Lancaster had referred to him as "stealing his timber," or as a "timber thief," on one occasion before the prosecution, and on another thereafter.

It will be noted that the charge was a simple misdemeanor, and it will not be controverted that one who aids or abets another in a misdemeanor is a principal. See *State* v. *Treweilder*, 103 Miss. 859, 60 So. 1015, 1039. On this whole case, if Pitts had been convicted on the charge preferred, there was ample evidence to support a verdict, and we would not, on that account, disturb it. *Threefoot* v. *Nuckols*, 68 Miss. 116, 8 So. 335. In *Berry* v. *Priddy*, 126 Miss. 125, 88 So. 517, this court said: "Probable cause is the existence of facts known to the defendant at the time he instituted the prosecution complained of sufficient to induce in the mind of a reasonable man a belief in the guilt of the accused."

Counsel for appellee seem to argue that the evidence tending to show that Lancaster was angry, in an ill temper, must be taken into consideration on the question of want of "probable cause." This is not true. Even if this

were proof of malice such as the law requires in this character of cases, even if malice was established, want of probable cause would not be inferable therefrom. We know of no authority contrary to this view. Lancaster had probable cause to believe that Pitts was willfully cutting his timber when he found him cutting it on the crooked and curved line which was alleged to be between two government subdivisions of land. Therefore appellee's cause must fail, for he failed to prove, in our opinion, a want of probable cause for the institution of a criminal prosecution.

Taking the case most strongly for the appellee, it could only be said there was a mistake of judgment on Lancaster's part as to the correct line between his land and that of O'Donnell, and that he was indignant because of what he conceived to be an encroachment upon his property and his rights. As this court said in *Vicksburg S. & P. R. Co.* v. *Porterfield,* 103 Miss. 585, 60 So. 652: "A prosecutor cannot be penalized for a mere mistake of judgment. In the practical administration of the criminal law, if a prosecution cannot be put under way until a complete case has been made out, the present criticism of public officers for a lax enforcement of the law will be as a spring zephyr to a tropical hurricane."

The facts in the case at bar are not disputed. In such a case "probable cause" is a question of law to be determined by the court. *McNulty* v. *Walker,* 64 Miss. 198, 1 So. 55. It is no answer to say that because a dispute was raised as to where the line actually was, therefore Lancaster acted without "probable cause."

Reversed, and judgment here for appellant.

*Reversed.*