500 So.2d 439 (1986)
ROYAL OIL COMPANY, INC., et al.,
v.
Pamela Ann WELLS.
No. 55632.
Supreme Court of Mississippi.
August 13, 1986.
Rehearing Denied January 28, 1987.
*440 Michael J. McElhaney, Jr., Robert W. Wilkinson, Megehee, Brown, Williams & Mestayer, Pascagoula, Fred Mannino, Robert E. Hessell, Page, Mannino & Peresich, Biloxi, for appellant.
W. Harvey Barton, Cumbest, Cumbest & Hunter, Pascagoula, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This malicious prosecution action arises out of the arrest and prosecution of a convenience store cashier on embezzlement charges ultimately "no-billed" by the grand jury. The core of this appeal is the cashier's employer's argument that she failed to prove want of probable cause for the embezzlement charge and malice in its bringing. A jury resolved these issues in the cashier's favor, returning a $9,600.00 *441 verdict. For the reasons detailed below, we affirm on direct appeal.
The cashier has cross-appealed the trial judge's refusal to allow the jury to consider her demand for an assessment of punitive damages. Because the malice necessary to undergird the malicious prosecution tort is close enough to the malice prerequisite to an assessment of punitive damages to warrant at the very least submission of the issue to the jury, we reverse and remand on that issue.

II.
On October 15, 1981, Pamela Ann Wells, then almost 22 years of age, was first employed by The Dodge Store in Gautier, Mississippi, as a waitress and cashier. The Dodge Store was and is a convenience store/gas station open 24 hours a day, seven days a week. It was and is owned and operated by Royal Oil Company, Inc.
The manager of The Dodge Store was April L. Miller. Curtis Eugene Miller, Jr, then April's husband, was an employee of the store working in a service and maintenance capacity. Darrell Eugene Ladner, April's brother, also worked there. April and Curtis Miller lived in a trailer on the premises of The Dodge Store and were on 24 hour call.
According to Wells, her relationship with the Millers was a good one until they found out that her husband was a black man, at which time they began harassing her and criticizing her work. She thereafter received two warning slips concerning her job performance. One warning slip indicated that Wells had failed to clean off the shelves in the store and the other indicated a $40.00 shortage occurring during her shift.
Ricky Carter worked at the club located next door to The Dodge Store. On the morning of January 12, 1982, Carter came into the store and purchased three or four cups of coffee from Pamela Wells. Carter gave Wells a ten dollar bill and Wells gave him his change. According to Carter, Wells rang up a "no sale" on the register and placed the $1.53 on top of the register. Carter telephoned Curtis Miller and told him that Wells had not rung up the sale. Curtis discussed the situation with Thomas F. Barnes, a Jackson County deputy sheriff, and then proceeded to the office of Jackson County Justice Court Judge Carroll Clifford. There Miller initiated a criminal charge of embezzlement against Pamela Ann Wells by executing and filing an affidavit charging Wells with the embezzlement of the $1.53. Judge Clifford then issued a warrant for Wells' arrest. All of this was done before Wells was given an opportunity to explain her side of the story.
Shortly thereafter, on the morning in question, Wells was summoned to the store office whereupon April and Curtis Miller accused her of the Ricky Carter incident. A few minutes later, Deputy Sheriff Barnes arrived with the warrant for Wells' arrest. Wells was taken into custody and in due course released on $1,000.00 bond.
A preliminary hearing was held in Justice Court before Judge Carroll Clifford at the conclusion of which Pamela was bound over to await the action of the April 1982 Jackson County Grand Jury. A transcript of the testimony of Curtis Miller and Ricky Carter from the Justice Court proceeding was prepared and sent to the Circuit Court to be presented to the grand jury. On April 14, 1982, the grand jury "no billed" the complaint.
Pamela Ann Wells commenced this civil action on March 18, 1983, by filing her complaint in the Circuit Court of Jackson County. Named as defendants were Royal Oil Company, Inc., d/b/a The Dodge Store and Curtis E. Miller. Wells charged the defendants with malicious prosecution, false imprisonment, false arrest and slander.
The case was called for trial on October 27, 1983 and was submitted to the jury on the malicious prosecution count only. Wells claimed damages for anxiety, nervousness and embarrassment, which had made her physically ill, loss of wages, loss of good reputation and good standing in the community. In response the jury returned *442 a verdict in her favor and against both defendants in the amount of $9,600.00. The trial court refused to submit to the jury the question whether punitive damages should be assessed. The usual post-trial motions were made and overruled. This appeal and cross-appealed have followed.

III.
Curtis Miller and Royal Oil Company both argue that the Mississippi Workers' Compensation Act affords Pamela Wells her exclusive remedy and thus this claim should have been held barred. See Miss. Code Ann. § 71-3-9 (1972). Miller v. McRae's, Inc., 444 So.2d 368, 371 (Miss. 1984) holds that the Workers' Compensation Act does not bar an employee from pursuing a common law remedy against his employer for an injury caused by his employer's wilful and malicious act. See also Luckett v. Mississippi Wood, Inc., 481 So.2d 288, 290 (Miss. 1985). Malicious prosecution is an intentional tort and is within those rights of action an employee may maintain against his employer consistent with the compensation act.
Curtis Miller, as an agent for Royal Oil Company, is not a "third person" for purposes of § 71-3-3(b). He occupies the same legal posture as the security chief sued in Miller. The trial court correctly held Wells' claim unaffected by our Workers' Compensation Act.

IV.

A.
Royal Oil and Curtis Miller charge that the evidence at trial is legally insufficient to sustain a verdict against them. They point particularly to the issues of malice and want of probable cause  necessary elements of the tort of malicious prosecution.
Overall, the elements of this tort are well established in our law and include:
(1) The institution of a criminal proceeding; (2) by, or at the insistence of, the defendant; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; (6) the suffering of injury or damage as a result of the prosecution.

Harvill v. Tabor, 240 Miss. 750, 753, 128 So.2d 863 (1961); see also Owens v. Kroger Co., 430 So.2d 843, 846 (Miss. 1983); Gaylord's of Meridian, Inc. v. Sicard, 384 So.2d 1042, 1043 (Miss. 1980); Pugh v. Easterling, 367 So.2d 935, 937 (Miss. 1979); Gandy v. Palmer, 169 So.2d 819, 826 (Miss. 1964).
In exploring the suggested inadequacies in Pamela's proof on two of these elements, Appellants would tiptoe past our limited scope of review of jury verdicts. As in other cases where the trial judge has refused to grant a motion for judgment notwithstanding the verdict, we must look at all of the evidence  not just that which supports the non-movant's case  in the light most favorable to the party opposed to the motion. That credible evidence tending to support the non-movant's case must be presumed true. Gordon by Lewis v. Wheat, 465 So.2d 1087, 1088 (Miss. 1985); Thomas v. Deviney Construction Co., 458 So.2d 694, 697 (Miss. 1984); Torabi v. J.C. Penney, Inc., 438 So.2d 1354, 1356 (Miss. 1983). The non-movant must also be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Coca Cola Bottling Co., Inc. v. Reeves, 486 So.2d 374, 380 (Miss. 1986). Moreover, the evidence favorable to the moving party must be disregarded if it has been contradicted or its credibility otherwise called into question. Vise v. Vise, 363 So.2d 548, 550 (Miss. 1978). If the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, the motion should be granted and, if it has not been, we must reverse. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the jury verdict *443 should be allowed to stand and the motion denied, and, if it has been so denied, we have no authority to reverse.
These principles have been stated in cases which are legion in number, including, but by no means limited to, Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1984); City of Jackson v. Locklar, 431 So.2d 475, 478 (Miss. 1983); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975). They are as applicable in malicious prosecution cases as any other. Owens v. Kroger Co., 430 So.2d 843, 848 (Miss. 1983); Torabi v. J.C. Penney, Inc., 438 So.2d 1354, 1355-56 (Miss. 1983); Gaylord's of Meridian, Inc. v. Sicard, 384 So.2d 1042, 1044 (Miss. 1980).

B.
We apply these principles to each element of the tort of malicious prosecution. When we do this we find much of Wells' claim readily established. Curtis Miller, acting in concert with his wife and on behalf of Royal Oil Company, instituted the criminal proceeding against Pamela Wells by swearing out an affidavit charging her with embezzling $1.53 which belonged to Royal Oil Company and obtaining a warrant for her arrest on that charge from the Justice Court Judge. The Justice Court Judge turned the matter over to the Grand Jury which refused to indict. As far as the record indicates, no further action was ever taken on the case. The prosecution may safely be regarded as having been abandoned. The termination requirement is met when the action is either abandoned by the prosecuting attorney or by the complaining witness. Pugh v. Easterling, 367 So.2d 935, 937 (Miss. 1979); Gandy v. Palmer, 169 So.2d 819, 827 (Miss. 1964); Conn v. Helton, 232 Miss. 462, 469, 99 So.2d 646 (1958); Harvey v. Dunaway, 461 F. Supp. 758, 759 (N.D.Miss. 1978).

C.
As is so often the case on appeals of this sort, Appellants' principal assault is upon plaintiff's proof of lack of probable cause and of malice. Compare Owens v. Kroger Co., 430 So.2d 843, 846-48 (Miss. 1983). Appellants argue here that, because the Justice Court Judge found probable cause to bind the matter over to the Grand Jury, probable cause is necessarily present and thus a claim of malicious prosecution must fail.
When a conviction is obtained in a lower court prosecution, whether reversed or not, a prima facie case is made that probable cause is present, in the absence of fraud, perjury or other corrupt practices. Gaylord's of Meridian, Inc. v. Sicard, 384 So.2d at 1044; J.C. Penney Company, Inc. v. Blush, 356 So.2d 590, 592 (Miss. 1978); Hyde Construction Co., Inc. v. Koehring Company, 546 F.2d 1193 (5th Cir.1977), 551 F.2d 73 (5th Cir.1977); Accord, Restatement (Second) of Torts § 667(1). That prima facie case, of course, is subject to rebuttal by plaintiff's evidence. In the factual context we consider here, Appellants appeared before the trial court armed with no such prima facie case, as a result of which the question of probable cause or the want thereof naturally became a jury question, with respect to which plaintiff bore the burden of proof by a preponderance of the evidence. J.C. Penney Company, Inc. v. Blush, 356 So.2d at 593.
The quest for probable cause vel non is made by reference to the facts reasonably available to the defendant at the time he initiates the said-to-be-malicious prosecution. Owens v. Kroger Co., 430 So.2d 843, 846 (Miss. 1983). Probable cause requires a concurrence of (1) an honest belief in the guilt of the person accused, and (2) reasonable grounds for such belief. One is as essential as the other. Harvill v. Tabor, 240 Miss. 750, 755, 128 So.2d 863 (1961).
The nature of probable cause in cases such as this, and the relationship of its want to malice, which plaintiff must also prove, has recently been explored.
It is universally agreed that the question of probable cause is a mixed question of law and of fact; that whether the circumstances alleged constitute *444 probable cause are sufficiently established is a matter of fact for the jury; but whether, supposing them to be true, as alleged, they amount to probable cause is a question of law, to be decided by the court... .
The inference of malice, which may be drawn from the want of probable cause, is not an inference of law, or prima facie evidence by which the jury are bound at all events, but `the whole matter is free before them, unembarrassed by any considerations of policy, or convenience, and unlimited by any boundaries but those of truth; to be decided by themselves, according to the convictions of their own understanding'.

Owens v. Kroger Co., 430 So.2d at 847 citing Whitfield v. Westbrook, 40 Miss. 311, 317-19 (1866).

1.
Want of probable cause may be proven by circumstantial evidence, but it is ordinarily necessary for the plaintiff to show circumstances from which the absence of probable cause may be inferred. Winters v. Griffis, 233 Miss. 102, 107, 101 So.2d 346 (1958). If the evidence is such that the jury could have believed the prosecution was instituted without probable cause, the judgment appealed from should not be disturbed. Conn v. Helton, 232 Miss. at 469, 99 So.2d 646.
Here, the jury could reasonably have believed that Pamela Wells had done no wrong and that there was no reasonable basis for a belief of the contrary. Wells testified that April Miller called her back to her office on the day that she was arrested and asked her about the coffee sales that she was accused of not ringing up. The officer arrived with a warrant for her arrest at this time and the document bore Curtis Miller's signature. Obviously, the warrant was sworn out and the officer on his way to arrest Wells before she was confronted with the charge of not ringing up the coffee sale. Wells attempted to explain that it was not uncommon for her to put change on top of the register because she periodically used the coins to fill up the machine that gave change to the customers automatically. After her arrest the drawer was checked, which she had been in charge of that day, and a $6.00 overage found. Testimony was that there was no consecutive coffee sale rung up on the detail tape which would indicate that Pamela Wells did not ring up the three or four coffee sales made to her customer. However, this tape was lost and not in evidence at trial.
The verdict makes clear that the jury resolved conflicts in the testimony in the favor of Wells. When the testimony of the witnesses is looked at in the light most favorable to the verdict, the jury finding of no probable cause is not an unreasonable one.

2.
"Malice" in the law of malicious prosecution is used in an artificial and legal sense and applied to a prosecution instituted primarily for purpose other than that of bringing an offender to justice. Owens v. Kroger Co., 430 So.2d 843 847 (Miss. 1983). In cases such as this, malice is most often is proved by circumstantial evidence. Absence of probable cause for the prosecution is circumstantial evidence of malice, Owens v. Kroger Co., 430 So.2d at 847, although the converse is not necessarily so. See Lancaster v. Pitts, 154 Miss. 406, 411, 122 So. 532 (1929).
In the context of the notion that malice includes the initiation of a prosecution "primarily for a purpose other than that of bringing an offender to justice", Owens v. Kroger Co., 430 So.2d 843, 847 (Miss. 1983), we find Wells' proof legally adequate. The "other purpose" suggested here was that Pamela Wells was the target of the Millers' anger because of her marriage to a black man. Wells testified that relations between her and her employers cooled perceptibly once they knew of this marriage. In spite of her claim that she remained conscientious about her work, she began to receive warning slips. Wells testified that hints and smart remarks concerning her *445 marriage were made at work and that someone wrote the word "nigger" on the side of her car about one week before the incident occurred. The record reflects that April's brother, Darrell Ladner, also an employee of The Dodge Store, hated black people because he had been beaten up by a black prisoner when he was in prison and had a permanent scar from the incident.
This "other purpose" evidence when coupled with the inferential evidence emanating from want of probable cause, are, when measured under the standards articulated above, sufficient to insulate from our authority to reverse the jury's malice finding.

D.
In the end, we consider this case similar in circumstances to that of Gaylord's of Meridian, Inc. v. Sicard, 384 So.2d 1042 (Miss. 1980). The plaintiff in Gaylord's was arrested for shoplifting in a department store. She was found guilty in city court and appealed to county court where she was acquitted. The defendants argued that probable cause and lack of malice had been conclusively established by virtue of the conviction in city court. Although the lower court conviction (reversal via a not guilty verdict on trial de novo on appeal) was prima facie evidence of probable cause, the presence of conflicting facts would cause the prima facie case to disappear. We held we would not reverse where, under such circumstances, the plaintiff succeeded in proving by a preponderance of the evidence that probable cause did not exist and the jury so found and thereby inferred malice. 384 So.2d at 1044. To like effect is our recent decision in Owens v. Kroger Co. cited above.
The present assignment of error is without merit and is denied.

V.
Appellants next invoke the doctrine of collateral estoppel. They argue that, because the Justice Court Judge found probable cause to refer the charge against Pamela Wells to the Grand Jury, the issue of probable cause cannot be relitigated. As noted earlier, this Court has held that a conviction in a lower court creates a prima facie case for the plaintiff to overcome.
Collateral estoppel is essentially a rule of evidence. It directs the manner in which certain facts may be established at trial. Sanders v. State, 429 So.2d 245, 251 (Miss. 1983). In Garraway v. Retail Credit Company, 244 Miss. 376, 141 So.2d 727 (1972) we stated:
Where a question of fact essential to a judgment is actually litigated and determined by a valid and final judgment, that determination is conclusive between the same parties in a subsequent suit on a different cause of action.
244 Miss. at 385, 141 So.2d at 730 as quoted in Mississippi Employment Security Commission v. Philadelphia Municipal Separate School District of Neshoba County, 437 So.2d 388, 394 (Miss. 1983).
Appellants fail today because the fact determination they rely upon does not undergird a final judgment. A determination by a Justice Court Judge that probable cause exists so as to refer a charge to the grand jury is not a final judgment for purposes of collateral estoppel. The assignment of error is denied.[1]

VI.
Defendant, Royal Oil, argues that it has no liability in the premises because Curtis Miller was acting on his own and in no way on behalf of Royal Oil. Pamela Wells counters that Miller was an employee of Royal Oil and at the very least had apparent authority to act for his employer.
*446 Royal Oil does not question that, under our law, a corporate employer may be held in a malicious prosecution action under a respondeat superior theory, nor could it. Allen v. Ritter, 235 So.2d 253 (Miss. 1970); Wutzke v. Wayne Lee's Grocery & Market, Inc., 199 So.2d 438 (Miss. 1967); Grenada Coca Cola Co. v. Davis, 168 Miss. 826, 151 So. 743 (1934). The argument rather is that under the facts of this case, Wells has not shown either that Royal Oil ratified the Millers' actions or that they were taken within the scope of their employment.
Questions of respondeat superior often, as here, present issues of fact resolution of which is assigned to the trier of fact, in this instance, the jury. Baxter Porter & Sons Well Servicing Co., Inc. v. Venture Oil Corporation, 488 So.2d 793, 796 (Miss. 1986); College Life Insurance Co. of America v. Byrd, 367 So.2d 929, 930 (Miss. 1979); Clow Corp. v. J.D. Mullican, Inc., 356 So.2d 579, 583 (Miss. 1978).
Curtis and April Miller were hired at the same time, she as manager of the store and he as a full time employee. The evidence shows that whatever Curtis Miller's job title, his actions at the store indicated that he was more than a mere employee, Ricky Carter, the neighboring businessman approached Curtis Miller as an authority figure when reporting that Pamela Wells had not rung up the coffee sales; Curtis Miller had free access to the register and to the office evidenced by his acts in pulling the detail tape from the cash register and taking it to the office to study; the deputy sheriff did not question Miller's authority when he served the warrant and arrested Pamela Wells; Justice Court Judge Clifford testified that both Curtis and April Miller came to his court and he believed that they were representing Royal Oil Corporation at that time. When questioned further about this, he explained
The reason I thought they were representing Royal Oil Company, they were his agents. Therefore, since they were his agents, I felt like they were representing Royal Oil Company... . My only  my opinion the reason they had authority because they were the managers. They were the managers, and since they were the managers, they were responsible for the oil company. Then I assumed that they were representing the oil company.
The fact that Curtis charged Wells with the embezzlement of Royal Oil's money would be construed by almost any rational juror to mean that he perceived that he was acting on behalf of and in the interest of his employer. April Miller called Royal Oil Company to report Wells' arrest soon after the arrest. Royal Oil did not reprimand or fire either April or Curtis Miller because of their actions in filing charges against Pamela Wells, nor were they docked in pay or in any other manner disciplined. This evidence suggests ratification.
April Miller was an active participant in the arrest of Pamela Wells. Curtis informed her before he took any action and she was with him when the warrant was served on Pamela and when Pamela was taken away in the squad car. Royal Oil's respondeat superior liability may result from the conduct of Curtis Miller, or April Miller, or both.
Royal Oil relies on Cook v. Whitfield, 41 Miss. 541 (1867). Cook involves a contract action as opposed to an intentional tort. More appropriate for comparison is Craft v. Magnolia Stores Co., 161 Miss. 756, 138 So. 405 (1931). Craft is easily distinguishable from the facts present in the case at bar. The employee in Craft went to the home of the accused and participated in a search of the house. The court found persuasive the fact that "without consultation with his superiors the servant left the place of business, and seven miles therefrom used slanderous language while he was apparently undertaking to assist the constable in executing a search warrant". 161 Miss. at 762, 138 So. at 406; see also Fisher v. Westmoreland, 101 Miss. 180, 189, 57 So. 563 (1911) (If actions of employee are to prevent a theft of employer's property as opposed to after the fact punishment for a theft already accomplished, then the action *447 taken is within the scope of the employment.)
This Court explained in Odier v. Sumrall, 353 So.2d 1370 (Miss. 1978) that
for the master to avoid liability because of the act of his servant it must be that at the time of the act the servant had abandoned his employment and was about some purpose of his own not incidental to the employment ... A servant's unauthorized conduct does not place it beyond the scope of his employment provided it is of the same general nature as that authorized or is incidental to the employment.
353 So.2d at 1372.
As Justice Griffith noted in Gill v. Dantzler Lumber Co., 153 Miss. 559, 121 So. 153, 156 (1929), "The rule of respondeat superior would lose all its vigor and purpose if it operated only while the agent was performing his duties rightly and ceased to apply when the agent performed wrongfully." Quoting Richberger v. Express Co., 73 Miss. 161, 18 So. 922, 31 L.R.A. 390, 55 Am.St.Rep. 522 Justice Griffith elaborated:
The master who puts a servant in a place of trust or responsibility, or commits to him the management of his business or care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty and authority and inflicts an unjustifiable injury upon another.
73 Miss. at 171-72, 18 So. at 924.
In Allen v. Ritter, 235 So.2d 253 (Miss. 1970) we held that, where the evidence was in conflict, questions pertaining to scope of employment and ratification by a master of his servant's act were questions not to be taken from the jury. 235 So.2d at 255. In the case at bar the jury properly considered that Curtis Miller signed an affidavit against Pamela Wells for the embezzlement of the $1.53 "owned by The Dodge Store". Pamela Wells was arrested on the premises, the manager was an active participant in the arrest and even telephoned Royal Oil Company to report the arrest.
Evidence of language in April Miller's contract precluding authority to arrest was properly presented to the jury and weighed with all other testimony. The factual determination that Curtis Miller was within the scope of his employment at the time he had Pamela Wells arrested is not rendered unreasonable by that one fact in itself. A private contractual arrangement between principal and agent limiting the principal's liability or the agent's authority ordinarily may not be enforced against a third party with no knowledge or reason to know of same. Cf. Hardy v. Brantley, 471 So.2d 358, 369-74 (Miss. 1985).
The question thus is not nearly so narrow as Royal Oil asserts: whether the principal specifically indicated that the agent had authority to do a certain act  in this case sign an affidavit for an arrest warrant. In this case Curtis and April Miller acted in the capacity of joint managers, Curtis Miller had access to the cash register and manager's office and often gave orders to the employees; the neighboring businessmen assumed he was the one to report deviations in employee behavior to; the deputy assumed he had the power to instigate an arrest; the Justice Court Judge assumed he was the manager and had authority to instigate an arrest. All of this is strong evidence that, notwithstanding the contract limitation, Royal Oil in fact authorized April and Curtis Miller to operate the store on a do-what-is-necessary-in-the-store's-interest basis. The record is devoid of supervisory directions to the contrary.
The jury necessarily found that Curtis Miller was acting on behalf of Royal Oil in bringing the charges against Pamela Wells. Though the testimony was conflicting, there is substantial evidence upon which the jury may reasonably have resolved the issue in Pamela's favor. For this reason, the verdict is beyond our authority to disturb. Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975); Coca Cola *448 Bottling Co., Inc. v. Reeves, 486 So.2d 374, 380 (Miss. 1986); College Life Insurance Company of American v. Byrd, 367 So.2d 929, 930 (Miss. 1979).

VII.
Appellants next argue that Wells' counsel violated our familiar rule that no reference should be made to the fact that a defendant is covered by liability insurance. Mid-Continent Aircraft Corp. v. Whitehead, 357 So.2d 122, 124 (Miss. 1978); see Rule 411, Miss.R.Ev., eff. January 1, 1986. The trial judge erred, we are told, when he refused to declare a mistrial. The point is specious.
Throughout, Royal Oil took the position that Curtis Miller was acting on his own, and in no way on behalf of Royal Oil, when he filed the embezzlement charges against Pamela Wells. Royal argued that any such conduct by Miller was beyond the course and scope of his employment. In rebuttal, Pamela Wells sought to show knowledge and ratification. The point at issue arose when Plaintiff's counsel asked Miller, first, whether he was fired for having filed the charges against Pamela Wells; second, whether he was docked in pay; and, third,
Isn't it true that Royal Oil Company is paying your attorneys to represent you here in court today?
The fact of insurance was never mentioned. Even if it had been, there would be no error. Agency was a hotly contested issue in this case. The matter of whether Royal Oil was affording Miller a defense was relevant to the question of agency. While evidence of the existence of liability insurance is not admissible upon the issue of whether a party acted negligently or otherwise wrongfully, it may well be relevant to other issues such as agency. In this regard Rule 411, Miss.R.Ev., is merely a restatement of our preexisting law.
For today's purposes, we hold that there is no error when plaintiff's counsel asked one defendant whether a corporate co-defendant is paying his attorneys fees where agency is an outcome determinative issue in the case where the fact of insurance is never mentioned. The assignment of error is denied.

VIII.
Turning to the question of damages, Appellants assign as error the granting of Instruction No. P-7 which reads as follows:
If you find for the Plaintiff, Pam Wells, in this case, then you may award the Plaintiff such damages sustained, if any, for her mental pain and mental anguish and suffering, including humiliation, embarrassment, and loss of reputation, that she suffered without suffering physical injury as you find from a preponderance of the evidence in this case to have been proximately caused by the act of the Defendant.
Appellants' complaint, if we understand it correctly, is that an award of damages for mental pain or mental anguish and suffering is not authorized in our law absent physical injury. We had thought the last vestiges of this out-moded view dispatched in First National Bank v. Langley, 314 So.2d 324, 329 (Miss. 1975).
The view Appellants espouse has never been appropriate in the context of the tort of malicious prosecution. The very nature of the tort is such that, when committed, it will inflict mental anguish and emotional distress upon the Plaintiff. This is one of the major elements of injury or loss of party the victim of a malicious prosecution will suffer and for which she will be entitled to redress. Furthermore, the nature of the tort is such that it will seldom produce an impact or physical injury.
In the above context, our cases have long recognized that a plaintiff in a malicious prosecution action may recover damages for harm to reputation resulting from the accusation brought against him and mental anguish or distress causally resulting from the malicious prosecution. Gandy v. Palmer, 251 Miss. 398, 169 So.2d 819 (1964); State Life Insurance Co. of Indianapolis v. Hardy, 189 Miss. 266, 195 So. 708 (1940).
*449 Instruction No. P-7 was a correct statement of our law. The assignment of error pressed here is denied.

IX.
Appellants finally argue that the jury verdict in the amount of $9,600.00 was grossly excessive and that a remittitur should be ordered. Miller cites two cases in which this Court reversed jury awards because the evidence did not substantiate damages awarded. Gaylord's of Meridian, Inc. v. Sicard, 384 So.2d 1042, 1045 (Miss. 1980); Gandy v. Palmer, 251 Miss. 398, 169 So.2d 819 (1964).
Pamela Wells proved that she was out of work for three and a half months and then accepted a job paying 10 to 15 cents an hour less than her job at The Dodge Store. She computes this to support the proof put on at trial of $1,932.00 in lost wages. She testified that she was afraid to seek employment during the three and a half month period because of the pending criminal charges. Wells cites as proof of damage to her reputation the fact that she was turned down for more than one job and the fact that news of her arrest and details claiming she had embezzled money from her employer were broadcast over the radio in her community.
Wells further testified to the mental distress she went through and the change in her lifestyle. She lost her appetite, cried easily and stayed inside refusing to leave the house. She noted that as she was unemployed and uninsured, a doctor was out of the question. Testimony from friends, a past employer, and relatives who observed the effect of the trauma on her in her day to day routine was relevant proof of emotional distress. These are the type damages appropriately compensated when the defendant's conduct is wilful. T.G. Blackwell Chevrolet Co. v. Eshee, 261 So.2d 481, 485 (Miss. 1972).
Wells notes that Gandy v. Palmer cited by Curtis Miller in support of his argument was a 1964 case in which the jury ordered a remittitur leaving a verdict of $4,000.00 if the plaintiff chose to accept it. Wells notes that a $4,000.00 verdict 20 years ago, when adjusted for inflation, closely parallels a $9,600.00 verdict such as the one she received. In addition, a verdict of $4,500.00 was affirmed in the case of Shaw v. Richardson, 392 So.2d 213 (Miss. 1980) with no expert medical testimony presented. Finally, Owen v. Kroger, a 1983 case, resulted in damages being found of $18,500.00 was upheld without question by this Court.
Our general rule is that a damage award may be altered or amended only when it is so excessive that it evinces passion, bias and prejudice on the part of the jury so as to shock the conscience. Bankers Life & Casualty Co. v. Crenshaw, 483 So.2d 254, 278 (Miss. 1985); Jesco, Inc. v. Shannon, 451 So.2d 694, 705 (Miss. 1984); City of Jackson v. Locklar, 431 So.2d 475, 481 (Miss. 1983). We are not authorized to disturb a jury verdict regarding amount of damages because it "seems too high" or "seems too low". Bankers Life & Casualty Co. v. Crenshaw, 483 So.2d 254, 278 (Miss. 1985); Toyota Motor Co., Ltd. v. Sanford, 375 So.2d 1036, 1037 (Miss. 1979).
Motions challenging the quantum of damages and seeking a remittitur are by their very nature committed to the sound discretion of the trial judge. Where the trial judge acts upon these matters, we reverse only if he has abused or exceeded his discretion. Dorris v. Carr, 330 So.2d 872, 874 (Miss. 1976). Having reviewed the evidence on damages offered by Plaintiff and having in mind that the nature of damages in malicious prosecution actions will often be difficult to quantify in monetary terms, we find the $9,600.00 verdict returned by the jury well within the evidence. Appellants' assignment of error challenging that verdict as being excessive is denied, and, for the same reason, Pamela Wells' cross-assignment of error challenging that verdict as being too low is denied.

X.
On cross-appeal Pamela Wells assigns as error the trial judge's refusal to submit to the jury the question of whether *450 punitive damages should be assessed against the Defendants. Her point is well taken. The same factual evidence of malice which we have above held sufficient to undergird the jury's positive finding of that element of the tort of malicious prosecution should at least suffice to submit the question of a punitive damage assessment to the jury.
It is the firmly established doctrine in this state that punitive or exemplary damages are always properly allowed where the trespass complained of or the breach of duty committed was malicious, wanton, wilful, or capricious.

Yazoo & M.V.R. Co. v. Williams, 87 Miss. 344, 355, 39 So. 489, 491 (1905); see also Newsom v. Henry, 443 So.2d 817, 824 (Miss. 1983); T.G. Blackwell Chevrolet Co. v. Eshee, 261 So.2d 481, 485 (Miss. 1972); Friendly Finance Co. of Biloxi, Inc. v. Mallett, 243 So.2d 403, 406 (Miss. 1971).
We have recently reiterated this view that a finding of malice will give rise to an assessment of punitive damages in Aetna Casualty & Surety Co. v. Day, 487 So.2d 830 (Miss. 1986); Weems v. American Security Insurance Co., 486 So.2d 1222, 1226 (Miss. 1986).
By holding that the question of punitive damages should have been submitted to the jury, we intimate no view that any such damages ought to be assessed in this case. Such determinations are peculiarly appropriate for the jury. Allen v. Ritter, 235 So.2d 253, 256 (Miss. 1970).
On direct appeal of both Royal Oil Company and Curtis E. Miller, the case is affirmed. On cross-appeal, the case is reversed and direct that on remand Plaintiff, Pamela Ann Wells, be given a new trial solely on the question of possible assessment of punitive damages, if any. At that trial, the jury should be instructed that Wells has already recovered an actual damage judgment of $9,600.00 against the two Defendants, jointly and severally.
We have considered the question of whether we should reverse and remand for a new trial on all damage issues. See Dame v. Estes, 233 Miss. 315, 323, 101 So.2d 644, 648 (1958). We find no authority, however, for disturbing the actual damage verdict returned in favor of Pamela Wells nor the judgment entered thereon.
Where the various features of a trial proceeding are rationally severable, we have in the interest of judicial economy required retrial of only those features of the first proceeding infected by error. Most common are the cases where we affirm on liability and reverse and remand for a new trial on damages. See, e.g., Sussman, Wormser & Co. v. Sea Food Co., 130 Miss. 632, 94 So. 795 (1923). In an action for wrongful cutting trees, we have remanded for a new trial solely on the question of the amount of the statutory penalty. Sansing v. Thomas, 211 Miss. 727, 52 So.2d 478 (1951).
The matter of the assessment of punitive damages is rationally separable from the rest of a civil action. Our law recognized the authority of a trial judge to bifurcate such proceedings. Rule 42(b), Miss.R. Civ.P.; State Farm Fire & Casualty Co. v. Simpson, 477 So.2d 242, 254 (Miss. 1985). Exercise of that authority is peculiarly appropriate where, as here, there is no error in the proceedings for actual damages.
No doubt a new trial on punitive damages only will necessitate proof which was considered on Wells' claim for actual damages. This is no different from those cases where we have remanded for a new trial on damages recognizing that retrial of the comparative negligence issue would be necessary to a correct and lawful consideration of the damages issue. See, e.g., Cherry v. Hawkins, 243 Miss. 392, 137 So.2d 815 (1962).
Accordingly, the case is reversed and remanded for a new trial solely on the question whether punitive damages should be assessed against either or both of the defendants. See Atkinson v. Dixie Greyhound Lines, 143 F.2d 477, 479 (5th Cir.1944); Hoy v. Poyner, 305 So.2d 306, 307 (Fla.App. 1974).
*451 AFFIRMED ON DIRECT APPEAL; AFFIRMED IN PART AND REVERSED AND REMANDED IN PART ON CROSS-APPEAL.
As to Parts I  IX, WALKER, C.J., ROY NOBLE LEE, and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
As to Part X, WALKER, C.J., ROY NOBLE LEE, P.J., and PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
HAWKINS, P.J., and DAN M. LEE, J., dissent by separate written opinion.
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent as to Part X of the majority opinion.
In my view this is not a case which warrants punitive damages, either under the facts or the law.
DAN M. LEE, J., joins this opinion.
NOTES
[1] We express no opinion on the matter of whether the findings of fact, if any, expressly a part of a final judgment of a non-record court, such as a justice court, are attended by such indicia of reliability and fairness that they may ever preclude relitigation of the same fact question in a subsequent civil action.